# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **WILLIAMS SIMONS & LANDIS PC,** § § § | | |
| *Plaintiff,* § § § | | |
| v. § § | Case No. 1:26-cv-00034 | |
| § § | | |
| **RISKON INTERNATIONAL, INC. F/K/A ECOARK HOLDINGS, INC., ECOARK, INC., ZEST LABS HOLDINGS LLC, ZEST LABS, INC., F/K/A INTELLEFLEX CORP., AND BARTKO PAVIA LLP,** § § § § § § § § § | | |
| *Defendants.* § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Plaintiff Williams Simons & Landis PC ("**WSL**" or "**Plaintiff**") files this Original Complaint ("**Complaint**") against RiskOn International, Inc. (formerly known as Ecoark Holdings, Inc.), Ecoark, Inc., Zest Labs Holdings LLC, Zest Labs, Inc. (formerly known as Intelleflex Corporation) (collectively, "**Claimant-Defendants**"), and Bartko Pavia LLP (collectively, "**Defendants**") on personal knowledge as to the facts concerning itself and on information and belief as to all other facts as follows:

# I.
# PRELIMINARY STATEMENT

1. This action arises from Claimant-Defendants' refusal to pay earned and contractually owed attorneys' fees and expenses to Williams Simons & Landis PC ("**WSL**") for legal services that produced extraordinary results, including landmark jury verdicts and a massive settlement against Walmart Inc. After securing the benefit of WSL's work, Claimant-Defendants undertook a concerted course of conduct to avoid payment, conceal settlement proceeds, and place assets beyond WSL's reach.

2. WSL was retained to prosecute high-stakes litigation on behalf of Claimant-Defendants against Walmart, Inc. ("**Walmart**") under written engagement agreements that expressly provided for payment of fees and expenses, including contingent compensation triggered by any recovery. WSL fulfilled its obligations, advancing the litigation through trial and obtaining a nine-figure verdict, preserving claims through retrial, all of which generated immense value for Claimant-Defendants. Rather than honor their contractual commitments once recovery was achieved, Claimant-Defendants refused to pay, in conjunction with Bartko withheld critical information regarding settlement proceeds and restructured their affairs in an effort to circumvent WSL's contractual and equitable rights.

3. Moreover, after WSL's entitlement to fees accrued, Claimant-Defendants transferred ownership interests, diverted or concealed settlement proceeds, and enlisted successor entities and Bartko to interfere with WSL's contractual rights. These actions were designed to prevent WSL from learning of, tracing, or recovering fair compensation.

4. This lawsuit seeks to enforce written agreements, recover unpaid fees and expenses, and obtain equitable relief necessary to account for and trace settlement proceeds wrongfully withheld. At its core, this case is straightforward: Claimant-Defendants obtained the benefit of

WSL's work, realized substantial recoveries, and now refuse to pay what they owe. Texas law does not permit clients, their successors, or their agents to retain the fruits of legal services while evading contractual and equitable obligations. WSL brings this action to recover the compensation it earned and to ensure that Defendants are held accountable under Texas law.

## II.
## THE PARTIES

5.  Plaintiff is a Texas professional entity licensed and registered to do business in the State of Texas with its principal office located in Austin, Travis County, Texas.

6.  Defendant RiskOn International, Inc., formerly known as Ecoark Holdings, Inc., ("**Ecoark Holdings**") is a Nevada corporation with its principal place of business in Las Vegas, Nevada, that may be served with process through its registered agent, Corporate Creations Network Inc., 112 North Curry Street, Carson City, NV, 89703, USA.[1]

7.  Defendant Ecoark, Inc., ("**Ecoark**") is a Delaware corporation. Ecoark may be served with process through its successor entity, Zest Lab Holdings, LLC, at 112 North Curry Street, Carson City, NV, 89703.[2]

8.  Defendant Zest Labs Holdings LLC, ("**Zest Holdings**") is a Nevada limited liability company with its principal place of business in Nevada, that may be served with process at its registered agent, Corporate Creations Network Inc., 112 North Curry Street, Carson City, NV, 89703, USA.

---

[1] Ecoark Holdings was the parent of Ecoark, Inc., and a party to the agreement between Ecoark, Inc. and Zest Labs, Holdings, LLC, dated August 25, 2023, that facilitated the sale of Zest Labs, Inc. to Zest Labs, Holdings, LLC.

[2] At the time of the execution of the contracts and the wrongful conduct at issue in this case, Ecoark was the parent company of Zest Labs, Inc. On or about August 25, 2023, Ecoark sold 100% of its outstanding share of capital stock of Zest Labs, Inc. to Zest Lab Holdings, LLC.

9. Defendant Zest Labs, Inc., formerly known as Intelleflex Corporation, ("**Zest Labs**") is a Delaware corporation, with its principal place of business in San Jose, California, that may be served with process at its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.[3]

10. Defendant Bartko Pavia LLP ("**Bartko**") is a New York limited liability partnership, with its principal place of business in San Francisco, California, that may be served with process at its registered agent, The Partnership, 555 Madison Avenue, 11th Floor, New York, New York 10022.

### III.
### RELEVANT NON-PARTIES

11. Vinson & Elkins, LLP ("**V&E**"), a law firm with its headquarters located at Texas Tower, 845 Texas Avenue, Suite 4700, Houston, Texas 77002.

12. Walmart, Inc., a company with its headquarters located at 702 SW 8th Street in Bentonville, Arkansas 72716.

### IV.
### JURISDICTION

13. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks damages well in excess of $10 million.

---

[3] At the time of the execution of the contracts and the conduct giving rise to this action, Zest Labs was a subsidiary of Ecoark, Inc. Zest Holdings now wholly owns Zest Labs.

14. This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state-law claims because those claims form part of the same case or controversy as the claims over which this Court has original jurisdiction.

15. Defendants are subject to personal jurisdiction in Texas because they purposefully availed themselves of the privilege of conducting business in Texas, including, without limitation, by:

   a. entering into and performing contracts with a Texas law firm headquartered in Austin;
   b. directing communications, misrepresentations, and payment obligations into Texas;
   c. maintaining corporate headquarters and principal operations in Texas during key periods relevant to the claims; and
   d. intentionally interfering with Texas-based contracts and directing tortious conduct at a Texas plaintiff, with knowledge that the injury would occur in Texas.

16. The exercise of personal jurisdiction over Defendants comports with the Texas long-arm statute and with the requirements of due process under the United States Constitution.

## V.
## VENUE

17. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and/or omissions giving rise to this action occurred within the Western District of Texas, including, without limitation, by:

   a. negotiation and execution of the relevant engagement agreements;
   b. performance of legal services by Plaintiff from its Austin headquarters;
   c. direction of fraudulent misrepresentations and payment-related communications into Austin; and
   d. Plaintiff's suffering of financial injury in this District.

18. The Austin Division is a proper and convenient venue because Plaintiff is headquartered in Austin, Travis County, Texas, and because many of the witnesses, documents, and operative facts relevant to this dispute are located in or connected to this Division.

## VI.
## FACTUAL BACKGROUND

a. **Prelude: Claimant-Defendants Retain WSL to Pursue High-Stakes Litigation**

19. In early 2018, a representative for Zest Labs and Ecoark Holdings contacted Fred I. Williams seeking representation in connection with matters involving potential trade secrets claims against Walmart, Inc. Mr. Williams relayed the situation to his law partners at V&E.

20. Over the ensuing months, Mr. Williams and his colleagues began evaluating the potential claims. Shortly thereafter, Claimant-Defendants formally retained V&E to investigate and prosecute their claims against Walmart.

21. After several weeks of discussion, the Parties agreed to a hybrid fee structure: part contingent, part funded through third party litigation financing. Under the agreement, the law firm was expressly entitled to retain any fees paid by the funder regardless of the outcome.

22. Thereafter, V&E (including the law partners who would later come to represent Claimant-Defendants in their lawsuits against Walmart and Deloitte Consulting LLP ("**Deloitte**") at WSL) began to assess the relevant legal issues.

23. On or about July 31, 2018, Claimant-Defendants entered into a contract via an engagement letter with V&E for legal representation in a trade secret lawsuit against Walmart ("**Walmart Case**"). The engagement letter among Ecoark Holdings, Zest Labs, and V&E is herein after referred to as the "**Walmart V&E Agreement**". The Walmart V&E Agreement provides that the representation will be handled partially on a contingent fee basis while another portion of the fees will be paid by Harbour Litigation Funding (the "**Funder**") under an Investment Agreement—

irrespective of the outcome of the case. The agreement provides that the law firm is entitled to keep any fees paid by the Funder.

24. The Walmart V&E Agreement provides that if Claimant-Defendants discharge the law firm and later obtain a "Recovery," the clients agree to pay the firm "in addition to the fees and expenses [the firm] received from the Funder, a reasonable contingency fee, plus any unreimbursed portion of any expenses and other costs, related to the legal service [the firm] provide prior to [its] discharge."

25. On or about August 1, 2018, Ecoark Holdings, Zest Labs, and V&E entered into an Investment Agreement with Harbour Fund IV, LLC ("**Harbour**"), to provide litigation funding for the Walmart Case. The only parties that could "breach" the Investment Agreement are Ecoark Holdings, Zest Labs, and Harbour. The Investment Agreement provided for total attorneys' fees and costs in the amount of $11,245,000. Specifically, the agreement provided for $9,015,000 in total attorneys' fees with $330,000 allocated for fees of local counsel, and $2,230,000 in total costs with $1,225,000 allocated for expert costs.

26. For more than a year, V&E zealously worked on the Walmart case. On or about November 22, 2019, Ecoark Holdings Chairman Randy May and Zest CEO Peter Mehring met with the Mr. Williams and two other lawyers who were planning to depart V&E by the end of 2019. They discussed that upcoming departure and the fact that the lawyers intended to open their own firm, which would become WSL. Eager to ensure that they could continue to receive exemplary legal services, Zest Labs and Ecoark Holdings orally agreed to retain the new law firm to represent the plaintiffs in the Walmart Case and WSL promised zealous advocacy.

### b. Paradise: WSL Delivers Extraordinary Results

27. On or about January 2020, attorneys Fred I. Williams, Michael Simons, and Todd Landis, former V&E attorneys who worked on the Walmart Case, opened the doors to their own firm, WSL. Through WSL, the three attorneys provide high caliber legal services designed to cater to the unique needs of clients engaging in complex commercial disputes. Having recognized the value created by WSL, Claimant-Defendants immediately sought to retain their services. On or about January 4, 2020, WSL was formally retained by Claimant-Defendants, as one of the firm's inaugural clients, to represent them in the Walmart Case. The contract via engagement letter was on the same terms as had been agreed between the clients and V&E in the V&E Walmart Agreement. The engagement agreement among Ecoark Holdings, Zest Labs, and WSL for the Walmart Case herein after referred to as the "**WSL Walmart Agreement**".

28. Thereafter, on or about February 14, 2020, Claimant-Defendants "irrevocably direct[ed] that all Proceeds received pursuant to the Proceedings [in the Walmart Case] shall be paid to the client account of Williams Simons & Landis PLLC and disbursed accordingly" as required by Schedule 6 to the Investment Agreement.

29. From its retention in January 2020 through 2024, WSL devoted extraordinary time, skill, and resources to the Walmart Case, advocating for its clients and delivering exceptional results.

30. On April 13, 2021, less than three years after their initial engagement, **WSL delivered on its promises**. WSL obtained a $115 million jury verdict and judgment in the case against Walmart in Walmart's home forum. To avoid paying the judgment, Walmart levied numerous allegations against Claimant-Defendants, and their lawyers in an attempt to escape liability.

i. **Claimant-Defendants Enter into Contract with WSL for Deloitte Case.**

31. Following this achievement, WSL was contacted by Claimant-Defendants about representing them in a previously filed lawsuit against Deloitte (the "**Deloitte Case**"). At the time, Claimant-Defendants were eager to continue working with WSL on cases in hopes that they could replicate their previous success. In an effort to persuade WSL to take on this additional case, Claimant-Defendants represented to WSL that they had $500,000 set aside to pay WSL's fees and expenses in the case against Deloitte.

32. Relying on Claimant-Defendants' assurances, WSL expanded the scope of their representation via the engagement letter dated March 1, 2023. The engagement agreement among Ecoark Holdings, Zest Labs, and WSL for the Deloitte Case herein after referred to the "**Deloitte Agreement**". WSL thereafter provided substantial legal services in connection with the Deloitte matter.

33. The relevant fee terms in the Deloitte Agreement provide that Zest Labs and Ecoark Holdings "will pay WSL $500,000 on an hourly basis. The Deloitte Agreement provides that WSL may use these funds for expenses related to the Lawsuit, or may bill [Zest Labs and Ecoark Holdings] for WSL's fees on a monthly basis."

34. From the date of its retention in the Deloitte Case until the case was dismissed, WSL provided professional legal services of significant value to its clients and zealously advocated for the best outcome. Despite these efforts, full payment was not made.

c. **Trouble in Paradise: Claimant-Defendants Contrive Reasons Not to Pay Earned Fees.**

35. Beginning in 2023, Claimant-Defendants claimed that they lacked funds to pay the outstanding invoices for WSL's work in the Deloitte Case.

36. On December 22, 2023, the Arkansas court ordered a new trial against Walmart set for 2025. Claimant-Defendants retained Defendant Bartko and others as new counsel in 2024 to represent the plaintiffs at retrial. WSL dutifully assisted the new lawyers in taking over the Walmart Case.

37. In early 2024, Bartko Co-Managing Partner Patrick Ryan initiated a telephone conversation with Fred I. Williams. During that call, Mr. Ryan asked if WSL would agree to waive its claim over its entitlement to fees in an amount exceeding *__$10 million__* accrued in the Walmart Case—Mr. Williams declined. Mr. Williams also disclosed to Mr. Ryan that Claimant-Defendants also owed WSL for approximately $300,000 in legal fees incurred in the Deloitte Case and expressed willingness to be practical in resolving the issues of fees and expenses due and payable to WSL. Mr. Ryan did not respond at any time thereafter.

38. Later, in August 2024, after years of repeatedly praising and expressing appreciation for WSL's work in the Walmart Case, Claimant-Defendants claimed dissatisfaction as a pretext to not pay WSL.

39. Claimant-Defendants hired a Texas lawyer to suggest strategic claims of negligence, which were directed to current and former partners of WSL and V&E in Texas. Those complaints were unfounded and constituted a transparent attempt to gain leverage in Claimant-Defendants quest to avoid paying for legal services provided by WSL and others.

40. However, WSL's quality proved irreplaceable. On May 13, 2025, an Arkansas jury returned a $223 million verdict in favor of the plaintiffs in the retrial of the Walmart Case—**using the same evidentiary record originally created by WSL**. Thereafter, on August 12, 2025, following settlement of the entire dispute against Walmart, the Arkansas court dismissed that case with prejudice and entered no sanctions in response to Walmart's previous requests for same.

**d.     Paradise Lost: Defendants Leave WSL High and Dry.**

41.     While Zest Labs, Ecoark Holdings, and Walmart refuse to disclose the amount of their settlement, on information and belief, it involves a multi-million-dollar payment from Walmart. That payment triggers the right of WSL to be paid additional amounts for its work and expenses in the Walmart Case in an amount to be determined by the Court.

42.     Despite demand, representatives of Claimant-Defendants have refused to make payment for WSL's work and expenses in both the Walmart and Deloitte Cases. Their refusal is a transparent and baseless money grab to avoid the financial obligations of their clients and of their clients' affiliates, investors, and co-conspirators. However, WSL's quality and impact on the resolution of those cases are undeniable and inseparable from the outcome.

43.     WSL's legal services were a substantial factor in producing the verdicts, leverage, and settlement proceeds obtained in the Walmart litigation, and Defendants' continued refusal to account for or remit those proceeds has caused and continues to cause substantial harm to WSL.

## VII.
## CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT – WALMART CASE
### (AGAINST ZEST LABS, ECOARK HOLDINGS, AND ZEST HOLDINGS)

44.     WSL repeats and re-alleges all prior paragraphs by reference.

45.     WSL, Zest Labs, Inc., and Ecoark Holdings, Inc. entered into a valid, binding, and enforceable written contract in the form of the WSL Walmart Engagement Agreement (the "**WSL Walmart Agreement**").

46.     Under the WSL Walmart Agreement, WSL agreed to provide extensive legal services in exchange for payment of attorneys' fees and expenses, including contingent fees triggered upon any recovery obtained in the Walmart litigation.

47. All conditions precedent to Claimant-Defendants' obligation to pay, and WSL's right to payment, under the WSL Walmart Agreement have occurred, been satisfied, or have been waived, including the achievement of a recovery in the Walmart litigation and WSL's performance of the legal services giving rise to its contractual fee entitlement.

48. WSL fully performed, or in the alternative substantially performed, all of its material obligations under the WSL Walmart Agreement, including investigating, prosecuting, and advancing the Walmart litigation through trial, post-trial proceedings, and retrial preparation resulting in extraordinary verdicts and settlement with Walmart.

49. Claimant-Defendants materially breached the WSL Walmart Agreement by, among other things:

    a. failing and refusing to pay attorneys' fees and expenses owed to WSL;

    b. failing to pay WSL's contingent fee and other compensation triggered by recovery in the Walmart litigation; and

    c. refusing to account for or disclose settlement proceeds necessary to calculate and satisfy WSL's contractual fee rights.

50. Despite demand, Claimant-Defendants have failed and refused to cure their breaches.

51. As a direct and proximate result of Claimant-Defendants' breaches, WSL has suffered damages in an amount to be determined at trial, including unpaid attorneys' fees, contingent fees, reimbursable expenses, interest, and other damages recoverable under Texas law.

52. WSL is entitled to recover its reasonable and necessary attorneys' fees incurred in enforcing the WSL Walmart Agreement pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 et seq., and hereby presents and tenders its claim for such fees.

53. At least as of August 15, 2024, Defendant Zest Labs Holdings LLC ("**Zest Holdings**") acquired all issued and outstanding ownership interests in Zest Labs, Inc., assumed or continued the business operations and benefits arising from the Walmart litigation, and accepted the benefits of WSL's legal services, including the recovery generated thereby.

54. As a result, Zest Holdings is liable for the breaches alleged herein as a successor in interest, under theories including express or implied assumption of liabilities, continuation of enterprise, and receipt of benefits under the contract, and is therefore jointly and severally liable for WSL's damages.

### COUNT II: BREACH OF CONTRACT – DELOITTE CASE
### (AGAINST ZEST LABS, ECOARK HOLDINGS, AND ZEST HOLDINGS)

55. WSL repeats and re-alleges all prior paragraphs by reference.

56. WSL, Zest Labs, Inc., and Ecoark Holdings, Inc. entered into a valid, binding, and enforceable written contract in the form of the Deloitte Engagement Agreement, pursuant to which WSL agreed to provide legal services in connection with the Deloitte litigation in exchange for payment of attorneys' fees and expenses, including up to $500,000 in hourly fees and reimbursable costs.

57. All conditions precedent to WSL's right to payment under the Deloitte Agreement have occurred, been satisfied, or have been waived, including WSL's provision of legal services, issuance of invoices, and Defendants' receipt and acceptance of those services.

58. WSL fully performed, or in the alternative substantially performed, all material obligations required of it under the Deloitte Agreement, including providing extensive legal services that advanced and preserved Claimant-Defendants' claims in the Deloitte litigation.

59. Claimant-Defendants' materially breached the Deloitte Agreement by, among other things, failing and refusing to pay attorneys' fees and expenses owed to WSL, including invoiced fees and expenses totaling less than $500,000, despite prior representations that funds had been set aside for that purpose.

60. Claimant-Defendants' failure to pay was not the result of any billing dispute or performance deficiency, but a refusal to honor their payment obligations after receiving the full benefit of WSL's services. Despite demand, Claimant-Defendants have failed and refused to cure their breaches.

61. As a direct and proximate result of Claimant-Defendants' breaches, WSL has suffered damages in an amount to be determined at trial, including unpaid attorneys' fees, reimbursable expenses, interest, and other damages recoverable under Texas law.

62. WSL is entitled to recover its reasonable and necessary attorneys' fees incurred in enforcing the Deloitte Agreement pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 et seq., and hereby presents and tenders its claim for such fees.

63. At least as of August 15, 2024, Defendant Zest Labs Holdings LLC ("**Zest Holdings**") acquired all issued and outstanding ownership interests in Zest Labs, Inc., continued the business operations and benefits associated with the Deloitte litigation, and accepted the benefits of WSL's legal services provided under the Deloitte Agreement.

64. As a result, Zest Holdings is liable for the breaches alleged herein as a successor in interest, under theories including express or implied assumption of liabilities, continuation of enterprise, and receipt of benefits under the Deloitte Agreement, and is therefore jointly and severally liable for WSL's damages.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
## (AGAINST BARTKO)

65.  WSL repeats and re-alleges all prior paragraphs by reference.

66.  There is a valid and enforceable contract in the form of the WSL Walmart Agreement.

67.  Bartko was aware of the existing WSL Walmart Agreement that was entered into among WSL, Ecoark Holdings, and Zest Labs. Bartko was also aware of the Deloitte Agreement that was entered into among WSL, Ecoark Holdings, and Zest Labs; it is a valid and enforceable contract.

68.  Bartko, through its conduct and communications with Defendants, intentionally induced Claimant-Defendants to breach the WSL Walmart Agreement and the Deloitte Agreement by refusing to pay WSL and interfering with the required payment for its performance of legal services under the agreements. Bartko has refused to provide details about the settlement in the Walmart Case, including the amount of the settlement payment by Walmart. Bartko is refusing to provide this information for the purpose of preventing WSL from collecting payment for the legal services it provided under the WSL Walmart Agreement. Bartko and the Claimant-Defendants entered into an agreement providing Bartko a larger payment for its legal services provided in the Walmart Case, if payment for WSL's legal services provided under the WSL Walmart Agreement was not made or not made in full. Bartko has refused to allow WSL to be paid for the legal services it rendered under the WSL Walmart Agreement and the Deloitte Agreement despite having received or controlled settlement funds from the Walmart Case through its trust account.

69.  Bartko was not merely advising Claimant-Defendants but actively controlling settlement funds, structuring payment priority, and refusing disclosure to benefit itself. This conduct was adverse to Claimant-Defendants' contractual obligations with Plaintiff.

70. Bartko had an independent pecuniary motive to ensure that WSL was not paid to increase their take from the Walmart Case. Indeed, Bartko sought to get WSL to "walk away" from any compensation and otherwise took actions to ensure it received all of the attorney share of the settlement funds.

71. Bartko's conduct was not undertaken in good-faith representation of its clients, but instead was outside the scope of legitimate legal services and motivated by Bartko's own independent pecuniary interests. Bartko acted as a direct economic competitor to WSL for a finite pool of settlement proceeds and knowingly prioritized its own compensation at the expense of WSL's vested contractual rights.

72. Bartko's interference with the WSL Walmart Agreement and the Deloitte Agreement was intentional and without justification. But for Bartko's interference with and control over the settlement funds, WSL would have been paid its share.

73. Bartko acted willfully, knowingly, and with callous indifference to WSL's rights. Bartko's conduct was driven by self-enrichment and involved deception, concealment, and misuse of its position as counsel to divert funds owed to another law firm. Such conduct warrants the imposition of exemplary damages under Texas law.

74. WSL has suffered actual damages as a result of the breach of the WSL Walmart Agreement, including, at a minimum, nonpayment of fees and expenses owed under that agreement.

75. WSL has suffered actual damages or loss as a result of the breach of the Deloitte Agreement, including, at a minimum, nonpayment of fees and expenses owed under that agreement.

76. WSL has been damaged in an amount to be determined by the jury and further seeks punitive and exemplary damages as permitted by Texas law.

## COUNT IV: UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

77. WSL repeats and re-alleges all prior paragraphs by reference.

78. This claim is **_pleaded strictly in the alternative_** to WSL's breach-of-contract claims, and only to the extent that any Defendant contends it is not bound by, did not assume, or is not liable under the written engagement agreements governing WSL's legal services.

79. WSL conferred substantial, direct, and measurable benefits upon Defendants, including but not limited to:

   a. the creation, prosecution, and preservation of valuable legal claims;
   b. the procurement of extraordinary jury verdicts and settlement leverage; and
   c. the generation of settlement proceeds and other recoveries derived from WSL's legal work.

80. Defendants knowingly accepted, used, and retained these benefits, including by receiving, controlling, or benefiting from settlement proceeds and recoveries generated through WSL's services.

81. Defendants obtained and retained these benefits under inequitable and wrongful circumstances, including through the concealment or diversion of settlement proceeds, interference with WSL's contractual rights, fraudulent transfers, and refusal to compensate WSL after recovery was achieved.

82. Defendants' enrichment occurred at WSL's expense, as WSL has not been paid the reasonable value of the services and benefits it provided despite Defendants' retention and use of those benefits.

83. Under principles of equity and good conscience, Defendants should not be permitted to retain the benefits conferred by WSL without payment, and it would be unjust and inequitable for Defendants to do so.

84. As a result of Defendants' unjust enrichment, WSL has suffered damages in an amount to be determined at trial, including at least the reasonable value of the benefits conferred and retained by Defendants.

## VIII.
## PRAYER FOR RELIEF

85. **WHEREFORE**, WSL demands that judgment be entered against Defendants, jointly and severally, as follows:

   a. Actual damages in an amount to be determined at trial, including unpaid attorneys' fees, contingent fees, reimbursable expenses, and other compensatory damages recoverable under Texas law;

   b. Pre-judgment and post-judgment interest as permitted by law;

   c. Reasonable and necessary attorneys' fees incurred by WSL in prosecuting this action, pursuant to: (1) Tex. Civ. Prac. & Rem. Code § 38.001 et seq.; and (2) any other applicable statutory or equitable basis;

   d. Costs of court and taxable litigation expenses as allowed by law;

   e. An order requiring Defendants to provide a full and complete accounting of settlement proceeds, litigation recoveries, and fund transfers relating to the Walmart litigation;

   f. Exemplary and punitive damages, where permitted by law, for Defendants' willful, malicious, fraudulent, and tortious conduct; and

   g. Such other legal or equitable relief as the Court deems just and proper.

## IX.
## DEMAND FOR A JURY TRIAL

86. WSL demands trial by jury on all issues so triable.

Dated: January 8, 2026                               Respectfully submitted,

**BREWER ATTORNEYS & COUNSELORS**

By: */s/ Joshua H. Harris*
William A. Brewer, III
(Bar No. 02967035)
wab@brewerattorneys.com
Joshua H. Harris
(Bar No. 2417306)
jkh@brewerattorneys.com

**Brewer, Attorneys & Counselors**
1717 Main St., Suite 5900
Dallas, TX 75201
Tel: 214-653-4000

***Attorneys for Plaintiff Williams Simons & Landis PC***