# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAMS SIMONS & LANDIS PC | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-CV-00034 |
| | § | |
| RISKON INTERNATIONAL, INC. F/K/A | § | |
| ECOARK HOLDINGS, INC., ECOARK, | § | |
| INC., ZEST LABS HOLDINGS LLC, ZEST | § | |
| LABS, INC., F/K/A INTELLEFLEX CORP., | § | |
| and BARTKO PAVIA LLP | § | |
| | § | |
| *Defendants* | § | |

## DEFENDANTS RISKON INTERNATIONAL, INC., ECOARK, INC., ZEST LABS HOLDINGS, LLC AND ZEST LABS INC.'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, ABSTAIN

Defendants RiskOn International, Inc., Ecoark, Inc., Zest Labs Holdings, LLC and Zest Labs, Inc. (collectively, "Zest" or "Defendants") move to dismiss the Complaint filed by Plaintiff Williams Simons & Landis PC ("WSL") (Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party whose presence would destroy diversity jurisdiction. Alternatively, Defendants move the Court to abstain from exercising jurisdiction under the *Colorado River* doctrine by dismissing this case or staying it, or in the further alternative, to dismiss under Rule 12(b)(6) for failure to state a claim.

## I.    PRELIMINARY STATEMENT

WSL, the plaintiff law firm here, has sued its former clients for alleged unpaid fees related to a prior suit against Walmart (the "Walmart Case") despite having been replaced as counsel after misrepresenting facts to a federal judge in an affidavit.

The Walmart Case was originally filed by Vinson & Elkins LLP ("V&E"). The principals of WSL were previously members of V&E and were active in filing and developing that case. They withdrew from V&E during the pendency of that case, formed their current firm, WSL, and carried on where they had left off at V&E. The terms of WSL's engagement by Zest are derived straight from the terms under which Zest had engaged V&E. WSL admits that its fee agreement for the Walmart Case originated with V&E and that the WSL agreement it seeks to enforce was "on the same terms" as the V&E agreement. (Dkt. No. 1 at ¶¶ 23-24, 27). Zest has sued both WSL and V&E in state court in Houston alleging malpractice and breach of fiduciary duty (the "State Court Case") (Ex. 1).

WSL now seeks to fracture what should be a single legal malpractice and fee dispute in state court to manufacture federal jurisdiction. In doing so, however, Plaintiff has conspicuously omitted V&E, a necessary party whose joinder would destroy diversity jurisdiction. V&E is a necessary party under Rule 19 because its agreement – with the same exact terms WSL seeks to enforce in this case – provides V&E with an alleged interest in the same "pot" of settlement proceeds WSL seeks to recover on the very same grounds (even if insupportable). (Dkt. No. 1 at ¶¶ 23-24, 27).

Joining V&E destroys diversity jurisdiction. At the time this case was filed by WSL, Defendant Zest Labs Holdings LLC had a member-manager domiciled in Florida. V&E is a partnership with a partner domiciled in Florida.[1] Therefore, if V&E had been properly joined, there would be Florida citizens on both sides of the case, eliminating this Court's subject matter

---

[1] Defendant Bartko Pavia LLP and V&E also both have partners in New York and Los Angeles according to their public profiles. See https://www.velaw.com/locations/ (last accessed March 2, 2026) and https://www.bartkopavia.com/en/locations (last accessed March 2, 2026).

jurisdiction.[2] Because V&E is a required party who cannot be joined without destroying diversity, this case must be dismissed under Rule 12(b)(7).

Alternatively, this Court should abstain from exercising jurisdiction in favor of the comprehensive State Court Case already pending in Harris County, where all necessary parties are present.

Finally, also alternatively, WSL's breach of contract claim under Count I fails as a matter of law, because an attorney terminated for cause forfeits any contractual right to a contingent fee. WSL's unjust enrichment claim under Count IV also fails as a matter of law, because WSL breached its engagement agreement with Defendants, breached its fiduciary duties to Defendants and because a contract covered the services at issue, barring equitable relief.

## II.    STANDARDS OF REVIEW

Rule 12(b)(7) requires first considering whether a plaintiff failed to name a required party under Rule 19, and if so, whether the absent party can be added to the case without depriving the court of subject-matter jurisdiction. Fed. R. Civ. P. 19(a). If the absent party cannot be added to the case without destroying jurisdiction, which is the case here, the Court must next determine whether the case should proceed or be dismissed "in equity and good conscience." Fed. R. Civ. P. 19(b). The Court is to consider: (1) the extent to which judgment in V&E's absence might prejudice V&E or existing parties; (2) whether prejudice could be lessened through protective provisions, shaping relief, or other measures; (3) whether judgment in V&E's absence would be adequate; and (4)

---

[2] WSL removed the State Court Case to the Southern District of Texas, but after Zest filed its Motion to Remand pointing out the lack of complete diversity, WSL stipulated to remanding the case back to state court, and it has been remanded. (Ex. 2). All the parties here, except for Bartko Pavia LLP, are now parties to State Court Case in Houston. Zest does not oppose the Court severing WSL's tortious interference claim against Bartko Pavia LLP, retaining jurisdiction over that separate claim to dismiss it as a matter of law for all the reasons expressed in Bartko Pavia LLP's Motion to Dismiss. (Dkt. No. 17).

whether plaintiff would have adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b)(1)-(4). All of those problems would be removed by this Court's granting any of the forms of relief Zest is seeking in this motion.

Abstention in favor of a parallel state court action may be warranted upon balancing six factors described in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S.800 (1976). A key factor in considering abstention is avoiding piecemeal litigation, and it weighs heavily in favor of abstention here. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Facts that only conceivably give rise to relief don't suffice. Thus, though we generally take as true what a complaint alleges, we do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action." *Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). But it is also "clearly proper ... to take judicial notice of matters of public record" when deciding a Rule 12(b)(6) motion. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III. ARGUMENT AND AUTHORITIES

### A. Dismissal of the Entire Action is Required Under Rule 12(b)(7) Because V&E is a Necessary Party Whose Joinder Destroys Diversity

Rule 12(b)(7) mandates dismissal for failure to join a party under Rule 19. The analysis asks: (1) is the absent party "required" under Rule 19(a) and (2) if joinder is not feasible, should

the case be dismissed or proceed "in equity and good conscience"? *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968).

## 1. V&E is a required party under Rule 19(a).

A party is required if it "claims an interest relating to the subject of the action" and its absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

Here, V&E has a financial interest in the "subject of the action" – an alleged fee from the Walmart Case. WSL alleges that the original engagement covering the Walmart Case representation was between V&E and Defendants. (Dkt. No. 1 at ¶ 23). WSL further alleges that it is entitled to a "reasonable contingency fee" based on those V&E engagement terms. (Dkt. No. ¶ 24). WSL acknowledges that V&E is a "relevant" party. (Dkt. No. 1 at ¶ 11).

Because both firms, WSL and V&E, are tied to the same representation of Defendants and both are asserting the same exact engagement terms, if this case were to proceed without V&E it would expose Defendants to a substantial risk of double payment or inconsistent obligations. As stated above, Zest has filed suit against WSL *and V&E* in Harris County District Court. If this Court were to award WSL a contingent fee from the Walmart Case, and a different court (where V&E is a party) awards V&E a contingent fee from the same Walmart Case, Zest could be subject to a double payment. Or, one court could ultimately determine that an additional contingent fee is owed while the other court rules no additional fee is owed from the Walmart Case. *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986) (finding party necessary where its absence risked "inconsistent obligations").

### 2. Joinder of V&E in this case is not feasible because it destroys diversity.

WSL has invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. However, Section 1332 requires complete diversity at the time of filing. V&E and Zest Labs Holdings LLC were not diverse at the time of filing.

V&E is a partnership. For diversity purposes, a partnership takes on the citizenship of *each* of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). V&E partner Samara Shepherd was a domiciliary of Coral Gables, Florida. (Ex. 3). Thus, V&E was a Florida citizen. V&E is also a citizen of California and New York.

Defendant Zest Labs Holdings LLC is a limited liability company. (Ex. 4). It takes on the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Its member-manager, Gary Metzger, was a domiciliary of Jupiter, Florida. (Ex. 5). Thus, Zest Labs Holdings LLC was a Florida citizen. If V&E were joined, a Florida citizen (V&E) would be adverse to a Florida citizen (Zest Holdings), destroying complete diversity. *See In re Levy*, 52 F.4th 244, 247 (5th Cir. 2022). In fact, WSL removed the State Court Case that Zest filed against both WSL and V&E, and upon the parties' stipulation, the federal court remanded that case on this very ground. (Ex. 2).[3]

### 3. The case cannot proceed in equity and good conscience under Rule 19(b).

Because V&E could not be joined here without destroying this Court's jurisdiction, the Court must next determine whether the action should be dismissed "in equity and good conscience." Fed. R. Civ. P. 19(b); *See Superior Diving Co. Inc. v. Cortigene*, 372 Fed. Appx. 496, 497 (5th Cir. 2010) (affirming dismissal under Rule 12(b)(7) where the absent party was necessary

---

[3] V&E would also be adverse to Bartko Pavia LLP, and both firms have partners and offices in California and New York.

to fully resolve the dispute and its presence defeated diversity). As in *Superior Diving*, equity demands that this dispute proceed in the forum where all necessary parties – and all claims – can be heard: the State Court Case in Harris County.

Rule 19(b)(1) - (4) describes the factors the Court is to consider when determining whether the case should be dismissed in equity and good conscience – prejudice to existing parties, extent such prejudice can be avoided, adequacy of judgment without the absent party, and whether the plaintiff has an adequate remedy upon dismissal. They all support dismissal here. Zest faces severe prejudice if forced to litigate fee entitlement against WSL in federal court and against V&E (and WSL) in the separate State Court Case. There is a risk of double recovery, inconsistent outcomes, and a substantial burden from litigating the same claims and disputes in two forums. That prejudice cannot be avoided without V&E as a party subject to the same judgment. And an adequate remedy exists in the State Court Case where *all* necessary parties (WSL, V&E, and Zest) are already named. There, the dispute can be fully and finally resolved in a single, unified proceeding.

### B. Alternatively, The Court Should Abstain Under the *Colorado River* Doctrine

Federal courts may abstain from exercising jurisdiction under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) in "exceptional circumstances" where yielding to a parallel state court proceeding serves "wise judicial administration." *Id.* at 817-18.

The Fifth Circuit applies six factors to determine if such circumstances exist: (1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law governs; and (6) the adequacy of the state forum to protect the parties' rights. *Brown*, 462 F.3d at 395. A careful balancing of these factors confirms that this case belongs in state court. We address each in turn.

The first factor, jurisdiction over a res, supports abstention. This case involves a dispute over a contingent fee interest in a specific fund of settlement proceeds. A court must ultimately determine whether WSL and V&E are entitled to a contingent fee out of the Walmart Case settlement, and even if so, whether the fee interest is more than offset by legal malpractice and breach of fiduciary duty damages suffered by Zest. *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939).

The second factor, the relative inconvenience of the forums, slightly favors abstention. While the Western District (Austin) and Harris County (Houston) are geographically close, the center of gravity for this dispute is Houston. V&E is headquartered in Houston, and the underlying malpractice claim centers on V&E's failure to plead, develop and prosecute proper damages from the outset of the Walmart case. (Ex. 1 at ¶¶ 4, 31-40). Much of the excessive billing also occurred in Houston, where V&E employed many of the over 20 timekeepers for the Walmart Case. (Ex. 1 at ¶ 4). The key evidence related to the malpractice and breach of fiduciary duty claims in this case should therefore be in V&E's files in Houston.

The third factor, avoidance of piecemeal litigation is often cited as the most critical factor and heavily favors abstention here. *Brown*, 462 F.3d at 395. The federal court cannot resolve the *entire* dispute due to a missing party. V&E holds a competing claim to a single set of proceeds from the Walmart Case settlement and is a target of Zest's compulsory legal malpractice and breach of fiduciary duty claims, but it is not a party to this case. If it were joined, V&E's presence would destroy diversity jurisdiction. Thus, unless this Court abstains from exercising its jurisdiction, there is a risk of inconsistent rulings regarding the same property (Walmart settlement proceeds) between this case (without V&E) and the State Court Case (where both WSL and V&E are parties). Only the state court can consider the entire picture of this dispute: the alleged malpractice by both

law firms, the cause for WSL's termination, and the proper allocation (if any) of the single contingent fee between the two firms.

The fourth factor, the order of filing, also favors abstention. While WSL filed this action one day before the State Court Case, the "first-to-file" rule does not apply where the filing was anticipatory or made in bad faith. *See Pac. Emp'rs Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985). WSL's filing here was a flagrant abuse of process. The filing date of WSL's Complaint shows that WSL opened this case on January 7, 2026 in violation of the parties' Tolling Agreement, which the parties had entered to explore a pre-suit settlement of Zest's legal malpractice claims. The Tolling Agreement prohibited filing suit before January 8, 2026 (prohibiting "commenc[ing] litigation in any way related to the Claims during the Tolling Period except during the seven (7) days before the Tolling Termination Date [January 15, 2026]). (Ex. 6 at ¶ 7). Even worse, counsel for WSL indicated that WSL agreed in principle to extend the Tolling Agreement to continue discussing a possible settlement. (Ex. 7). Little did the undersigned know that WSL was preparing to surreptitiously file this anticipatory suit. This Court should not reward WSL's bad-faith and contract-breaching race to the courthouse. Because the State Court Case is the first *properly* filed suit, this factor favors abstention.

The fifth factor, whether state or federal law governs the dispute, similarly favors abstention. This case involves no federal questions. It turns exclusively on Texas and/or Arkansas[4] contract law, fiduciary duties, and the specific application of fee forfeiture rules for attorneys terminated for cause. Texas courts have a strong interest in policing the billing practices and ethical conduct of Texas lawyers. *See U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964)

---

[4] Most of the legal work at issue was conducted in Texas by Texas lawyers, but the Walmart Case was filed in Arkansas.

(…[T]he priorities between Turner and the attorney's fees are a matter of state law."); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) ("These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary.").

The sixth factor, adequacy of the state forum, heavily favors abstention. Indeed, the state forum is not just adequate; it is superior. The Harris County District Court can resolve every claim for every necessary party (WSL, V&E, and Zest) in a single judgment. This Court cannot. Because V&E is a necessary party whose presence destroys diversity, this Court cannot provide a complete remedy.

All six *Colorado River* factors therefore favor abstention. Avoiding piecemeal litigation and the adequacy of the state court forum weigh heavily due to V&E's absence as a party here while it is a named party in the State Court Case. Accordingly, this Court should dismiss or stay this action to permit the state court to resolve the entire intertwined fee/malpractice controversy.

### C. Alternatively, Count I and Count IV Must Be Dismissed Under Rule 12(b)(6)

If the Court exercises jurisdiction and does not dismiss or stay this matter, it should dismiss Count I (Breach of Contract - Walmart Case) and Count IV (Unjust Enrichment) because WSL fails to state a claim in either instance upon which relief can be granted. WSL was terminated for cause in the Walmart Case, and that undisputed fact precludes its alleged contractual right to a contingent fee under Count I. WSL's conduct also constitutes a material breach of both its engagement agreement and its fiduciary duty that precludes any right to additional equitable relief under Count IV. Further, the existence of contracts between the parties bars WSL's claim for equitable relief under Count IV.

**1. Count I must be dismissed, because WSL was terminated for cause.**

While WSL alleges it "delivered extraordinary results," the Court may take judicial notice of the public records from the underlying Walmart Case that reveal that claim to be false. *See Norris v. Hearst Trust*, 500 F.3d 454, 461, n.9 (5th Cir. 2007). WSL did nothing of the sort. The public court record establishes that the Federal District Court in Arkansas found that WSL attorneys submitted a false affidavit to the court disclaiming any knowledge of a Walmart patent application and, as a result, ultimately granted Walmart a new trial, vacating a ~$100 million judgment in Zest's favor. (Ex. 8, Dec. 22, 2023 Order).[5] The court later ruled that it was considering additional sanctions because of WSL's conduct:

> The Court is considering sanctions against Plaintiffs and Plaintiffs' former counsel, WSL, Michael Simons, Todd Landis, Jonathan Hardt, and Fred Williams for misrepresentations to the Court about Plaintiffs' and their counsels' knowledge of the Bohling patent application. The misrepresentation was made at various times to the Court about the timing of their knowledge of Walmart's application for the Bohling patent before trial, including docket entry # 247. In reliance on the misrepresentation or misrepresentations, the Court refused to allow Walmart to argue to the jury that Zest knew about the patent application and did not attempt to stop its publication. Walmart should have been allowed to make that argument at trial. The Court has found that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching and that this evidence would probably produce a different result at trial. The Court has the inherent authority and authority under Rule 11 to order a party and its attorneys to pay sanctions in the form of attorneys' fees reasonably incurred because of a misrepresentation. In addition, the Court has authority pursuant to 28 U.S.C. § 1927 to order an attorney to personally pay the opposing party's attorneys' fees where the attorney's conduct has multiplied the proceedings unreasonably.

(Ex. 9, Oct. 23, 2024 Order re Sanctions).

WSL could not have credibly continued to represent Zest in the Walmart Case after submitting a false affidavit to the federal judge overseeing the case. Zest was forced to hire *and*

---

[5] WSL's Complaint concedes that a retrial was ordered, confirming that the "results" they claim to have achieved were negated by their own conduct. (Dkt. No. 1 at ¶ 36).

*compensate* new counsel, Defendant Bartko Pavia LLP, to continue prosecuting its claims against Walmart.

Under Texas law, an attorney who fails to perform a contract or is terminated for cause, loses his right to a contingent fee interest under the contract. *Mandell and Wright v. Thomas*, 441 S.W.2d 841 (Tex. 1969) (permitting recovery of a contractual fee interest only if terminated *without* good cause); *Mustang Pipeline Co, v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").[6]

### 2. Count IV must be dismissed, because WSL breached its engagement agreement with Zest.

WSL's wrongful conduct not only constituted cause for termination in and of itself but also breached its engagement agreement with Zest. "The attorney-client relationship is a contractual relationship..." *Byrd v. Woodruff*, 891 S.W.2d 689, 700 (Tex.App.—Dallas 1994, writ dism'd). And the duty to render legal services with reasonable care is embedded in the very nature of that contractual relationship. *Id.*; *also see Murillo Modular Group, Ltd. v. Sullivan*, No. 3:13-cv-3020-M, 2015 WL 1442977, at *6 (N.D. Tex. Mar. 31, 2015). WSL's conduct, confirmed by the public record in the Walmart Case, plainly constitutes a material breach of its engagement and prohibits the recovery of any additional fees from its non-breaching client, including any fees sought under quantum meruit, unjust enrichment or any other supposed equitable theory such as WSL seeks here under its Count IV claim.[7]

---

[6] Similarly, under Arkansas law (where the Walmart Case was tried), an attorney's contingent fee interest is void and unenforceable if the attorney is terminated for cause. *Williams v. Ashley*, 890 S.W.2d 260, 262 (Ark. 1995).

[7] Texas courts have found that unjust enrichment is not an independent cause of action. *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex.App.—Texarkana 2008, pet. denied). WSL has nevertheless cast its Count IV as an unjust enrichment claim. This motion treats Count IV as an equitable claim

In *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.), the Texas Court of Appeals found that an attorney who took unauthorized legal actions on behalf of his client breached his contract with the client and prohibited the recovery of any additional fees under any theory, whether contractual or equitable. The Court explained that an "…attorney who has himself breached contract may not recover for services performed thereunder, whether on contract basis *or in quantum meruit*." *Id.* (emphasis added) (citing *Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960) ("…if such an attorney commits a material breach of his contract of employment, he thereby forfeits *all* right to compensation.") (emphasis added) (finding attorney who was suspended could not recover any compensation based upon contract or quantum meruit).

### 3. Count IV must be dismissed, because WSL breached its fiduciary duties to Zest.

The public record of WSL's deceit also confirms that WSL breached its fiduciary duties owed to Zest, including the duties of loyalty, care, obedience, good faith and fair dealing, and candor. Texas Disciplinary Rule 3.03(a)(1) prohibits lawyers from "knowingly mak[ing] a false statement of material fact or law to a tribunal" and Rule 8.04(a)(3) prohibits engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."

An attorney who breaches his fiduciary duty may be required to forfeit his entire fee – even the fees the client already paid. *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999) (holding that fee forfeiture is a remedy for breach of fiduciary duty regardless of actual damages). Factors Texas courts consider when determining whether all fees should be forfeited as a result of breaching

---

for quantum meruit, which is what Zest understands the claim to be seeking. Regardless, even if unjust enrichment were to be considered as a viable legal claim, their elements are the same, and the claim fails for the same reasons that a quantum meruit claim fails. *Protectors Ins. And Fin. Servs., LLC v. Lexington Ins. Co.*, No. H-12-3469, 2013 WL 5164630, at *4 (S.D. Tex. Sept. 12, 2013) ("To recover on an unjust enrichment claim or a claim under the doctrine of quantum meruit . . . ")

fiduciary duties include "the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, and other threatened or actual harm to the client, and the adequacy of other remedies." *Id.* The Supreme Court further emphasized that "the public interest in maintaining the integrity of attorney-client relationships" must be given great weight in considering fee forfeiture. *Id.* All of these factors support the forfeiture of all fees from WSL, certainly including the additional fees WSL seeks under Count IV.

### 4. The existence of contracts bars WSL's equitable claim under Count IV.

WSL alleges that it had a contract with Zest related to the Walmart Case and a contract covering its services regarding a case against Deloitte. (Dkt. No. 1 at ¶ 27 and ¶ 32). Those allegations bar WSL's equitable claim under Count IV. "A plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).

WSL's pleading Count IV only in the alternative does not save the claim. A party who breaches a contract cannot alternatively claim quantum meruit when the absence of an enforceable contract scenario is based entirely on the fact that the party breached the contract or that the contract is unenforceable as a matter of law as a result of the breaching party's wrongdoing. *See Truly*, 744 S.W.2d at 938 ("Equity does not support a recovery in quantum meruit in this case. Truly rendered services to benefit a joint venture in which he held a large ownership interest. He then breached the joint venture agreement, terminating the joint venture and precipitating the failure of the project."); *also see Royden*, 331 S.W.2d at 209; *Kelly*, 630 S.W.2d at 761.

### III. PRAYER

For these reasons, Defendants Zest Labs, Inc. and Zest Labs Holdings LLC respectfully request that the Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(7). Alternatively, Defendants request the Court abstain from exercising jurisdiction, dismiss or stay this case in favor of the State Case, or in the further alternative, dismiss Counts I and IV of the Complaint under Rule 12(b)(6) with prejudice.

Respectfully submitted,

**WYNNE LAW PLLC**

 /s/ David E. Wynne
David E. Wynne (*Pro hac vice pending*)
Texas State Bar No. 24047150
Kenneth R. Wynne
Fed. Bar No. 8327
1800 Bering Dr., Suite 1075
Houston, TX 77057
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
dwynne@wynnepllc.com
kwynne@wynnepllc.com

***Attorneys for Defendants RiskOn International, Inc., Ecoark, Inc., Zest Labs Holdings, LLC, Zest Labs, Inc.***

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Court's e-filing system and/or via e-mail on this the 2nd day of March, 2026.

 /s/ David E. Wynne
David E. Wynne

# EXHIBIT 1

# 2026-01330 / Court: 61

CAUSE NO. _____

| | | |
|---|---|---|
| ZEST LABS, INC. f/k/a INTELLEFLEX CORPORATION and ZEST LABS HOLDINGS, LLC | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| V. | § § | HARRIS COUNTY, TEXAS |
| VINSON & ELKINS, LLP; WILLIAMS SIMONS & LANDIS, PC; FRED WILLIAMS, MICHAEL SIMONS; TODD LANDIS, and JONATHAN HARDT | § § § § § | |
| *Defendants.* | § § | \_\_\_\_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Zest Labs, Inc. f/k/a Intelleflex Corporation and Zest Labs Holdings, LLC (collectively, "Zest"), complain of Defendants Vinson & Elkins, LLP ("V&E") and Williams Simons & Landis, PC ("WSL"), Fred Williams, Michael Simons, Todd Landis, and Jonathan Hardt (collectively, "Defendants") as follows:

### SUMMARY OF THE DISPUTE

1. This action arises out of Defendants' prior engagement as counsel for Zest in a bet-the-company trade secret misappropriation case against Walmart, Inc.

2. Zest is a technology company. It spent over $140 million researching and developing technology that extends the shelf-life of food and reduces food waste. Zest marketed its technology to Walmart, but instead of licensing the technology from Zest, Walmart misappropriated it for its own use.

3. Zest hired V&E and litigation ensued.

4. Defendants bungled the representation of Zest from the start, failing to seek the most basic, obvious relief to which Zest was entitled. V&E handled the vast majority of the work

developing the case and finalizing the damage model, ultimately billing Zest over $7.7 million (on top of seeking an additional contingent fee interest) and employing over 20 billing timekeepers on the file.

5.    Lead counsel for Zest – Williams, Simons, Landis, and Hardt – then saw an opportunity for an even larger payday by striking out on their own to form a separate law firm and taking the case with them. They formed WSL and went on to charge Zest another $5.6 million through trial (on top of their own share of a contingent fee interest).

6.    Zest initially obtained a $105 million judgment against Walmart after an eight-day trial. However, the judge overseeing the case determined that Zest's counsel intentionally misled the Court in a sworn affidavit on a key issue and set aside the judgment as a sanction.

7.    The Court permitted Zest to hire new counsel to re-try the case (at additional cost to Zest, of course), but the damages Zest could seek in the second trial were capped as a result of Defendants' prior failure to properly develop the case and, in particular, their failure to seek Zest's research and development costs as damages.

8.    The second trial against Walmart resulted in a larger verdict, but still between $67.3 million and $200 million less than what Zest should have recovered had Defendants sought the most basic and obvious relief available under the law for a trade secret misappropriation case – research and development costs.

9.    Defendants also breached their fiduciary duties to Zest by grossly overbilling for their services. Their fees should be disgorged.

10.    This lawsuit is necessitated by Defendants' refusal to accept responsibility for their misconduct and failure to abide by their obligations as counsel to Zest.

## THE PARTIES

11.     Plaintiff Zest Labs, Inc. is a Nevada corporation with its principal place of business in Florida.

12.     Plaintiff Zest Labs Holdings, LLC is a Nevada limited liability company with a principal place of business in Florida.

13.     Defendant V&E is a Texas limited liability partnership with a principal place of business in Houston, Texas. It may be served with process at 845 Texas Ave., Suite 4700, Houston, Texas 77002.

14.     Defendant WSL is a Texas professional corporation with its principal office in Austin, Texas. It may be served with process through its registered agent, Fred Williams, at 106 East Sixth Street, Suite 900-168, Austin, Texas 78701.

15.     Defendant Fred Williams is an individual who resides in Austin, Texas. He may be served at 106 East Sixth Street, Suite 900-168, Austin, Texas 78701 or wherever he may be found.

16.     Defendant Michael Simons is an individual who resides in Austin, Texas. He may be served at 200 Congress Ave., Unit 29A, Austin, Texas 78701 or wherever he may be found.

17.     Defendant Todd Landis is an individual who resides in Dallas, Texas.  He may be served at 6019 Prestonshire Ln., Dallas, TX 75225 or wherever he may be found.

18.     Defendant Jonathan Hardt is an individual who resides in Austin, Texas. He may be served at 712 W. 14th St., Ste A, Austin, TX 78701 or wherever he may be found.

## JURISDICTION AND VENUE

19.     Venue is proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code 15.002(a)(3), because it is where Defendant V&E's principal office is located. Venue is also proper insofar as a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred in Harris County. Tex. Civ. Prac. & Rem. C. 15.002(a)(1).

20.    The amount in controversy exceeds the jurisdictional minimum of this Court.

**DISCOVERY LEVEL**

21.    Zest intends to conduct discovery under Level 3 of the Texas Rule of Civil Procedure 190.4.

**FACTS**

**A. Zest Researches and Develops "Zest Fresh" and Markets the Technology to Walmart.**

22.    Zest began developing a technology-based process to reduce fresh food waste in the grocery industry in 2010. It poured over $140 million into that effort. The technology increases retail grocer margins by significantly reducing post-harvest losses through dynamic updates about actual product freshness on each pallet of food to ensure a maximum shelf-life for food sold in stores.

23.    In 2014, Zest marketed its technology, known as "Zest-Fresh", to Walmart, and the parties entered a Confidentiality Agreement and Document of Understanding, and later entered a Mutual Confidentiality and Non-Disclosure Agreement, to ensure that Zest's trade secrets remained protected.

24.    Over the ensuing months, Zest gave numerous presentations and exchanged emails with Walmart executives regarding its Zest-Fresh technology. At the same time, Walmart was developing its own technology-based process to preserve fresh produce and avoid food waste.

25.    Walmart then agreed to pilot Zest Fresh in 2016. Zest continued to provide Walmart details and information about its technology throughout the pilot program and into 2017.

26.    Walmart terminated its business relationship with Zest Fresh on November 9, 2017. The very next day, on November 10, 2017, Walmart filed its own provisional patent application

4

covering technology to prevent food waste and soon thereafter announced the launch of its own technology-based processes to reduce food waste that it called "Eden."

27.     Stunned by the revelation of Eden and its obvious similarity to Zest Fresh on the heels of Walmart terminating its relationship with Zest, Zest retained V&E to investigate its legal rights.

**B. Zest Hires V&E and Files Suit.**

28.     Zest formally engaged V&E by letter dated July 31, 2018. The letter states that "[V&E] will represent Zest Labs in prosecuting its claims against Wal-Mart Stores, Inc. and Walmart, Inc. (collectively "Walmart") regarding, [sic] claims related to Walmart's improper use of Zest Labs trade secret technology including its Zest Fresh solution, which tracks the freshness of food in the supply chain and reduces fresh food shrink…"

29.     V&E's engagement letter further provided that V&E was to be compensated on an hourly rate basis *and* contingent fee basis.

30.     V&E prepared and filed a lawsuit for Zest against Walmart on August 1, 2018. It alleged that Walmart committed Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, Trade Secret Misappropriation under the Arkansas Trade Secrets Act, and Breach of Contract.[1]

**C. V&E Develops Damage Models and Draft Jury Verdict Form.**

31.     V&E put swarms of lawyers on the case, racking up millions of dollars in fees. As part of its earliest work on the case, V&E devoted substantial attention to the damage models that

---

[1] V&E also alleged Conversion, Unfair Competition by Misappropriation, Fraud, Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment, but those claims were summarily dismissed by the Court as a matter of law.

Zest would pursue in the case. V&E has 95 separate time entries in its billing records related to analyzing and developing damage models for Zest's claims. V&E selected a damages expert and worked closely with him to finalize the damage numbers for Zest.

32. V&E also drafted a jury verdict form and instructions outlining damages available to Zest at an eventual trial. V&E's time records reveal that it worked on the verdict form on 6/28/2018, 7/3/2018, 7/16/2018, 7/20/18, 7/22/2018, 8/3/2018, 8/4/2018, 8/17/18 ("review the model jury instructions for Zest Labs' cause of actions and verdict forms"), 8/17/18 ("confer internally regarding jury instructions and verdict forms"); 9/17/18 (Review draft jury instructions and verdict form").

33. Despite the millions of dollars V&E charged for its work, V&E made a fundamental error. Its lawyers focused exclusively on lost profits, reasonable royalty, and food waste savings as damage models and did not even consider, much less pursue, the most obvious and critical damage theory available to Zest under the law – Zest's research and development costs.

34. Including research and development costs as a damage model is step one in any trade secret misappropriation case, especially when such costs are as high as they were at Zest. The model is relatively easy to prove, because all of the necessary information is at Zest, and it is therefore very difficult for a defendant to attack it as a viable theory of recovery. The investment dollars can also be framed as a defendant's instant gain, because it was able to avoid spending those dollars to obtain the technology. Research and development costs provide a concrete, hard dollar damage model that is compelling, easy to prove, and straightforward to explain to a jury.

35. In fact, research and development costs is such an elementary and obvious damages theory that it is explicitly provided for as damages in the Defend Trade Secrets Act Model Jury Instructions, the Arkansas Model Jury Instructions Measure of Damages – Misappropriation of

6

Trade Secrets (Civil AMI 2604), and approved by the Arkansas Supreme Court, which has explained, "[T]he development and labor costs … are clearly part of the fair-market value of the trade secrets, and [Defendant] gained a benefit by using these trade secrets without paying for their development. Because of this, [Defendant] was unjustly enriched by its use of the [trade secrets] without having to contribute to the time, effort, and cost of their development." *R.K. Enters., LLC v. Pro-Comp Mgmt., Inc.*, 372 Ark. 199, 207 (2008).

36.     Federal courts across the country have endorsed the research and development damage model in trade secret cases. "[T]he actual development costs of the plaintiff [can be] the complete measure of damages." *Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974); also see *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) ("The costs a plaintiff spent in development … can be a proxy for the costs that the defendant saved."); *accord PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022) (plaintiff's research and development costs are "indicative of the costs … avoided by misappropriating the fruits" of plaintiff's work); *Bourns, Inc. v Raychem Corp.*, 331 F.3d 704, 709-710 (9th Cir. 2003) (affirming district court's damages award of $9 million after relying on evidence that the plaintiff's development cost was $3 million per year and that the defendant saved at least three years of development costs).

37.     By contrast, the reasonable royalty damage model that V&E pursued is disfavored. It is subject to attack and all manner of unknowns such as what a willing buyer and seller would have agreed to in connection with licensing the subject technology. It is also subject to apportionment arguments along the lines that any success of the technology was the result of the defendant's marketing, brand, and other features, not necessarily the technology itself.

38.     Lost profits are also often difficult to prove and sustain through legal challenges by trade secret defendants for similar reasons. In this case, lost profits were especially suspect, because Zest had not previously earned profits. V&E's third damage theory, savings from the reduced food waste that Walmart allegedly realized from using Zest's technology, also suffered from speculation, because Walmart contributed other technology and processes – beyond Zest's technology – to reduce food waste. Establishing the line at which Zest's technology prevented food waste at Walmart versus what savings resulted from Walmart's other processes, was dubious.

39.     As should have been expected by V&E, the Court ultimately drastically reduced Zest's reasonable royalty damage model and struck Zest's damages expert witness' opinions regarding lost profits and cost savings from the reduction of food waste. V&E's myopic focus on the *estimated commercial* value of Zest Fresh to the exclusion of its *actual investment* value was inexcusable and fell far below the applicable standard of care.  In any trade secret case, but especially a case of this magnitude for Zest and one in which it had invested nearly $150 million in Zest-Fresh, V&E's failure to develop and pursue those research and development costs as an alternative damage model constitutes clear malpractice.

40.     Any competent trade secret litigator would have included research and development costs as an alternative damage theory, but V&E failed to even consider it, much less include it in its expert's opinions or draft jury verdict form.

**D. V&E Lawyers Start Their Own Firm, Take the Zest Case, and Lie to the Court.**

41.     After completing fact discovery, solidifying the damage models to pursue, and largely completing the expert analysis related to damages over the course of a year and half at V&E, the lead lawyers handling the Zest case started their own firm beginning January 1, 2020. Williams, Simons, Landis and Hardt formed WSL and took the Zest case with them.

42.     WSL replaced V&E as counsel of record, but V&E retained a portion of its contingent fee interest in the case and continued monitoring its progress.

43.     Zest moved for partial summary judgment on Walmart's alleged misuse of Zest's trade secret. Walmart responded, arguing that Zest had consented to the use by Walmart, because it knew about Walmart's provisional patent application, which had been produced in discovery to Zest's lawyers. Zest's lawyers replied to Walmart's "consent" defense by filing a sworn affidavit that they had not actually seen the provisional patent application in discovery before the patent was published by the U.S. Patent Office. The affidavit was false, but Walmart and the Court took Zest's lawyers at their word, and Walmart did not pursue a consent defense at trial on that basis.

**E. Zest's First Trial Against Walmart.**

44.     Zest tried its case against Walmart for 8 days. It submitted a jury verdict form that, consistent with V&E's prior damages analysis, failed to seek Zest's research and development costs.

45.     The jury returned a verdict in favor of Zest, and the Court entered a judgment in the amount of $110 million. The jury awarded $60 million as damages based upon a reasonable royalty damages theory and $50 million as exemplary damages.

46.     WSL and its lawyers then sought to recover attorney's fees but without any support for the request in the form of time records. Walmart demanded to see the time records, which is commonly required in connection with any fee request, and the Court promptly ordered WSL to provide its time records to Walmart. During the course of reviewing those records, Walmart discovered that Zest's lawyers had, indeed, seen and reviewed its provisional patent application during the course of discovery – contrary to the sworn affidavit they submitted to the Court.

47.    Walmart moved for sanctions. After additional briefing and argument on the issue, the Court withdrew the judgment in favor of Zest. It permitted Zest to obtain new counsel to re-try the case, which Zest did. The new trial was to be a re-do, without adding any new theories and issues, except for the consent defense that Walmart could raise based upon Zest's lawyers having seen and reviewed the provisional patent application before publication.

**F. Zest's Second Trial Against Walmart.**

48.    Almost immediately upon their engagement, Zest's new counsel recognized V&E's failure to develop or pursue the research and development cost damages model. Zest's replacement counsel attempted to add the research and development cost damages theory, but the Court warned the parties that the second trial would be a re-do, mirroring the same issues raised in the first trial. The Court denied additional discovery, but the new counsel introduced evidence at trial regarding Zest's research and development costs and sought to include the element of damages in their draft jury verdict form.

49.    Walmart opposed the alternative research and development cost damages request on the basis that it had not been previously disclosed or pursued in the case, and the Court ultimately refused to submit any damages question or instructions to the jury regarding Zest's research and development costs.

50.    The jury again returned a verdict in favor of Zest on the basis of a reasonable royalty amount and awarded exemplary damages based upon 2x the actual damages, this time for a total of nearly $220 million ($72.7 million in actual damages and $150 million in punitive damages).[2]

---

[2] The jury actually awarded more in punitive damages than permissible under the 2x actual damage cap.

51.     While the verdict was higher than the first trial, it was still at least $67.3 million short of what Zest should have recovered had Defendants pursued the $140 million research and development costs as an actual damages model.  But without that damage model in Zest's expert report, interrogatory responses, or in the record from the first trial, Zest's new counsel was unable to pursue those additional, real damages that Zest suffered in the second trial.  Moreover, Zest was unable to seek an additional $130 million in exemplary damages. While punitive damages are capped at 2x actual damages, that cap would have been much higher had the research and development cost actual damages been available to Zest.  All told, Zest could have, and likely would have, recovered a $420 million judgment, not a $220 million judgment, absent Defendants' malpractice had the jury applied the same 2x multiplier in awarding punitive damages.

**G. Defendants' Excessive and Unconscionable Billing.**

52.     Defendants charged Zest over $13 million for their work on the underlying case against Walmart. The fees include excessive hourly rates, charges for unreasonable time spent on basic tasks, unnecessary duplicative billing, inflated time spent on the case, all to say nothing of how much Zest could have saved by simply seeking the most obvious and basic damage model available to it.

53.     Incredibly, over 17 different associates worked on the case, and, by way of just one example, Defendants charged for 200 hours of preparing for a deposition and 19.9 additional hours preparing the witness for the deposition, while the witness testified under oath that he prepared with counsel for only 6 hours. More than doubling actual hours spent appears to be commonplace throughout Defendants' billing records.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE

54.    Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

55.    Defendants were obligated to perform their legal services with the same degree of skill, care, attention, effort, and diligence that a reasonably prudent lawyer would use in handing a trade secret misappropriation case. By the conduct outlined above, including by failing to develop and seek recovery of Plaintiffs' research and development costs, Defendants failed to abide by the applicable standard of care.

56.    Defendants' negligence proximately caused Plaintiffs substantial damages.

### COUNT II:  BREACH OF FIDUCIARY DUTY

57.    Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

58.    As Zest's legal counsel, Defendants owed Plaintiffs fiduciary duties of loyalty, utmost good faith, fair, honest dealing, integrity of the strictest kind, and the obligation to refrain from self-dealing.

59.    Defendants breached their fiduciary duties to Zest by inflating their billable hours and charging excessive fees for their legal services. These breaches proximately caused Plaintiffs damages and resulted in a wrongful benefit to Defendants such that their fees should be forfeited.

### EXEMPLARY DAMAGES

60.    Plaintiffs incorporate by reference and re-allege each of the allegations contained in the foregoing paragraphs.

61.    Defendants' breaches of fiduciary duty were willful and done with malice and/or gross negligence. Defendants are therefore liable for exemplary damages.

## VICARIOUS LIABILITY

62.    At all material times, the individual Defendants Williams, Simons, and Landis were partners at V&E and then at WSL. Defendant Hardt was a senior associate at V&E and later a partner at WSL. The liability of the individual Defendants and the law firms of V&E and WSL is therefore vicarious and joint and several. All of the Defendants, whether acting directly, indirectly or vicariously through agents, partners or employees, acted as attorneys for Plaintiffs at all times material to the causes of action asserted herein.

## TOLLING OF LIMITATIONS

63.    Any applicable statute of limitations must be tolled in accordance with the Hughes Tolling Rule, fraudulent concealment, agreement by the parties, and equitable estoppel.

## RULE 47 STATEMENT OF DAMAGES

64.    Plaintiffs seek damages over $1,000,000.

## REQUEST FOR DISCLOSURE

65.    Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that each Defendant disclose the information and material described in Rule 194.2(a) - (l) within 50 days of service of this request.

## REQUEST FOR JURY TRIAL

66.    Plaintiff demands a trial by jury and has paid the applicable fee simultaneously with the filing of this Petition.

## PRAYER

Plaintiffs pray for a final judgment against Defendants that includes the following relief:

    a. all categories of damages recoverable at law or equity, including compensatory, actual, direct, and incidental damages resulting from Defendants' conduct and breaches;

    b. fee forfeiture;

    c. exemplary damages;

    d. pre-judgment and post-judgment interest;

    e. court costs, and

    f. all other relief to which Plaintiffs are entitled, whether at law or in equity.


Dated: January 8, 2026

Respectfully submitted,

**WYNNE LAW PLLC**

    _/s/ David E. Wynne_
David E. Wynne
Texas State Bar No. 24047150
Ken Wynne
Texas State Bar No. 22110000
1800 Bering Dr., Suite 1075
Houston, TX 77057
713-227-8835 (office)
713-227-6205 (facsimile)
dwynne@wynnepllc.com
kwynne@wynnepllc.com

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Linda Parish on behalf of David Wynne
Bar No. 24047150
lparish@wynnepllc.com
Envelope ID: 109819058
Filing Code Description: Petition
Filing Description: Plaintiffs' Original Complaint
Status as of 1/8/2026 1:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Wynne | | dwynne@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |
| Kenneth Wynne | | kwynne@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |
| Linda Parish | | lparish@wynnepllc.com | 1/8/2026 1:17:30 PM | SENT |

# EXHIBIT 2

United States District Court
Southern District of Texas

**ENTERED**

February 10, 2026

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ZEST LABS, INC. F/K/A | § | CIVIL ACTION NUMBER |
| INTELLEFLEX CORPORATION | § | 4:26-cv-00186 |
| and ZEST LABS HOLDINGS, LLC, | § | |
| Plaintiffs, | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| versus | § | |
| | § | |
| | § | |
| VINSON & ELKINS LLP, | § | |
| WILLIAMS SIMONS & LANDIS PC, | § | |
| FRED WILLIAMS, | § | |
| MICHAEL SIMONS, | § | |
| TODD LANDIS, and | § | |
| JONATHAN HARDT, | § | |
| Defendants. | § | |
| | § | |

### ORDER ON REMAND

Pending before the Court is a stipulation between Plaintiffs and Defendants regarding remand of this case to state court. Plaintiffs originally filed this case in the District Court of Harris County, Texas, Cause No. 2026-01330, with Judge Schuchart of the 61st Judicial District Court presiding.

Having considered the stipulation, the Court hereby ORDERS:

This case is REMANDED to the 61st Judicial District Court of Harris County, Texas for further proceedings.

The Clerk is ORDERED to provide a copy of this Order to the District Clerk of Harris County, Texas.

The Motion to Transfer Venue (Dkt. No. 3) is therefore moot.

SO ORDERED.

Signed on  February 09, 2026 , at Houston, Texas.

Honorable Charles Eskridge
United States District Judge

1

# EXHIBIT 3




ADDRESS    OWNER NAME    SUBDIVISION NAME    FOLIO

**SEARCH:** 612 NW 1 St                        Suite        🔍  Back to Search Results

## PROPERTY INFORMATION ⓘ

**Folio:** 03-4108-001-3521

**Sub-Division:**
CORAL GABLES SEC B PB 5-111

**Property Address**
612 ALCAZAR AVE

**Owner**
SAMARA M SHEPHERD

**Mailing Address**
612 ALCAZAR AVE
CORAL GABLES, FL 33134

**PA Primary Zone**
0100 SINGLE FAMILY - GENERAL

**Primary Land Use**
0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT

| | |
|---|---|
| **Beds / Baths /Half** | 3 / 3 / 0 |
| **Floors** | 2 |
| **Living Units** | 1 |
| **Actual Area** | 2,854 Sq Ft |
| **Living Area** | 2,254 Sq Ft |
| **Adjusted Area** | 2,356 Sq Ft |
| **Lot Size** | 5,000 Sq Ft |
| **Year Built** | 2005 |



## Featured Online Tools

Comparable Sales
Report Discrepancies
Value Adjustment Board
Glossary
Report Homestead Fraud
Tax Visualizer
PA Additional Online Tools
Special Taxing Districts and Other Non Ad valorem Assessments
Property Record Cards
Tax Comparison
Property Search Help
Tax Estimator
Property Taxes
TRIM Notice

### ASSESSMENT INFORMATION (i)

| Year | 2025 | 2024 | 2023 |
|---|---|---|---|
| Land Value | $600,000 | $645,485 | $504,285 |
| Building Value | $615,317 | $498,435 | $504,514 |
| Extra Feature Value | $913 | $924 | $935 |
| Market Value | $1,216,230 | $1,144,844 | $1,009,734 |
| Assessed Value | $1,216,230 | $756,218 | $734,193 |

### TAXABLE VALUE INFORMATION (i)

| Year | 2025 | 2024 | 2023 |
|---|---|---|---|
| **COUNTY** | | | |
| Exemption Value | $50,722 | $50,000 | $50,900 |
| Taxable Value | $1,165,508 | $706,218 | $684,193 |
| **SCHOOL BOARD** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $1,191,230 | $731,218 | $709,193 |
| **CITY** | | | |
| Exemption Value | $50,722 | $50,000 | $50,000 |
| Taxable Value | $1,165,508 | $706,218 | $684,193 |
| **REGIONAL** | | | |
| Exemption Value | $50,722 | $50,000 | $50,000 |
| Taxable Value | $1,165,508 | $706,218 | $684,193 |

### BENEFITS INFORMATION (i)

| Benefit | Type | 2025 | 2024 | 2023 |
|---|---|---|---|---|
| Save Our Homes Cap | Assessment Reduction | | $388,526 | $275,541 |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,722 | $25,000 | $25,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional)

### FULL LEGAL DESCRIPTION (i)

CORAL GABLES SEC B PB 5-111
LOT 10 BLK 20
LOT SIZE 50.000 X 100
OR 18579-4423 0499 1

### SALES INFORMATION (i)

| Previous Sale | Price | OR Book-Page | Qualification Description | Previous Owner 1 | Previous Owner 2 |
|---|---|---|---|---|---|
| 03/27/2024 | $1,750,000 | 34165-2207 | Qual by exam of deed | GEORGE LOUIS PITA JR | |
| 10/29/2020 | $950,000 | 32179-4419 | Qual by exam of deed | HOMAYRA RAQUEL ZAMBRANO CELLY | FAUSTO ESTUARDO LEON RAMIREZ |
| 05/31/2018 | $865,000 | 31009-4156 | Qual by exam of deed | ALESSANDRO RE | |
| 04/01/1999 | $110,000 | 18579-4423 | Sales which are qualified | | |

For more information about the Department of Revenue's Sales Qualification Codes.

2025   2024   2023

### LAND INFORMATION (i)

| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
|---|---|---|---|---|---|
| GENERAL | SFR | 0100 - SINGLE FAMILY - GENERAL | Square Ft | 5,000.00 | $600,000 |

### BUILDING INFORMATION (i)

| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
|---|---|---|---|---|---|---|
| 1 | 1 | 2005 | 2,854 | 2,254 | 2,358 | $615,317 |

Current Building Sketches Available

## EXTRA FEATURES (i)

| Description | Year Built | Units | Calc Value |
|---|---|---|---|
| Chain-link Fence 4-6 ft high | 2005 | 50 | $415 |
| Wall - CBS unreinforced | 2005 | 150 | $448 |

## ADDITIONAL INFORMATION

* The information listed below is not derived from the Property Appraiser's Office records. It is provided for convenience and is derived from other government agencies.

**LAND USE AND RESTRICTIONS**

| | | | |
|---|---|---|---|
| Community Development District: | NONE | Community Redevelopment Area: | NONE |
| Empowerment Zone: | NONE | Enterprise Zone: | NONE |
| Urban Development: | INSIDE URBAN DEVELOPMENT BOUNDARY | Zoning Code: | SFR-SINGLE-FAMILY RESIDENTIAL DISTRICT |
| Existing Land Use: | 11-Single-Family, High Density (Over 5 DU-Gross Acre, other Government Agencies and Community Services than Townhouses, Duplexes and Mobile Homes) | | |

**OTHER GOVERNMENTAL JURISDICTIONS**

| | | | |
|---|---|---|---|
| Business Incentives | Childrens Trust | City of Coral Gables | Environmental Considerations |
| Florida Inland Navigation District | Septic : Well: Property List (MDC) | Septic : Well: Septic GIS Points (DOH) | Septic : Well: Well GIS Points (DOH) |
| PA Bulletin Board | Special Taxing District and Other Non Ad valorem Assessment | School Board | South Florida Water Mgmt District |
| Tax Collector | | | |

The information contained herein is for ad valorem tax assessment purposes only. The Property Appraiser of Miami-Dade County is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser of Miami-Dade County and Miami-Dade County assumes no liability. See full disclaimer and User Agreement at https://www.miamidade.gov/pa/disclaimer.page

For inquiries and suggestions email us at Contact Form
Version: 2.1.0



## Help & Support

Privacy Statement
Disclaimer
Accessibility

## Key Services

Property Search
Homestead Exemption
Save Our Homes
Changing Your Property Information
Common Forms

## Connect with Us

News & Events
Contact Us
Public Records Requests
Careers

© 2025 Property Appraiser of Miami-Dade County.
All rights reserved.

Under Florida law, e-mail addresses are public records. If you do not want your e-mail address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in writing.

# MEMBER PROFILE

**DIRECTORIES**

Lawyer Directory

Authorized House Counsels

Certified Foreign Legal Consultants

Law Faculty Affiliates

Florida Registered Paralegals

Directory of Courts-Related Websites

Legal Groups

Judicial Nominating Commissions



# Samara Meichae Shepherd

Member in Good Standing                     Eligible to Practice Law in Florida

| | |
|---|---|
| Bar Number: | 1044529 |
| Mail Address: | Vinson & Elkins LLP |
| | 612 Alcazar Ave |
| | Coral Gables, FL 33134-3770 |
| | Office: 713-758-2186 |
| | Cell: 813-309-0564 |
| Email: | samara.shepherd@gmail.com ✉ |
| Personal Bar URL: | https://www.floridabar.org/mybarprofile/1044529 |
| vCard: |  |
| County: | Miami-Dade |
| Circuit: | 11 |
| Admitted: | 04/19/2023 |
| 10-Year Discipline History: | None |
| Sections: | Young Lawyers |
| Firm: | Vinson & Elkins LLP |
| Firm Size: | >100 |
| Firm Position: | Partner/Shareholder |

 
**ABOUT THE BAR**

About The Bar Home
Frequently Asked Questions
President's Welcome
The Florida Bar Board of Governors
Committees
Sections & Divisions
Board Certification
Florida Registered Paralegal Program
Strategic Plan / Research
Leadership Academy
Contact The Florida Bar

**NEWS & EVENTS**

News & Events Home
Florida Bar News
Florida Bar Journal
News Releases
Social Media
Daily News Summary
Calendars
Meetings & Conventions
Media Resources
Publications

**FOR THE PUBLIC**

Public Home
Lawyer Complaints and Discipline
Clients' Security Fund
Consumer Information
Lawyer Referral Service
Legal/Ethics Education
Prepaid Legal Services
Pro Bono & Legal Aid
Pro Hac Vice/Limited Appearance
Speaker's Bureau
Unlicensed Practice of Law

**FOR OUR MEMBERS**

Members Home
Benefits / Discounts
Continuing Legal Education
Fastcase Login
LegalFuel
Mental Health and Wellness Center
Lawyers Advising Lawyers
Legislative Activity
Career Center, Appointments & Applications
Join Lawyer Referral Service
Pro Bono Service Opportunities and Reporting
Florida Lawyers Assistance
Florida Voluntary Bars

**DIRECTORIES**

Directories Home
Lawyer Directory
Authorized House Counsels
Certified Foreign Legal Consultants
Law Faculty Affiliates
Florida Registered Paralegals
Courts-Related Websites
Legal Groups
Judicial Nominating Commission Information

**RULES, ETHICS AND PROFESSIONALISM**

Rules, Ethics and Professionalism Home
Rules Regulating The Bar
Ethics
Henry Latimer Center for Professionalism

'To inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence.'
~ From the Rules Regulating The Florida Bar

**CONTACT**

Address:
651 E Jefferson St
Tallahassee, FL 32399
Phone:
850-561-5600

# EXHIBIT 4



## Entity Information

### Entity Information

| | |
|---|---|
| **Entity Name:** | ZEST LABS HOLDINGS LLC |
| **Entity Type:** | Domestic Limited-Liability Company (86) |
| **Formation Date:** | 05/22/2023 |
| **Termination Date:** | |
| **Compliance Hold:** | |

| | |
|---|---|
| **Entity Number:** | E32137352023-5 |
| **Entity Status:** | Active |
| **NV Business ID:** | NV20232795857 |
| **Annual Report Due Date:** | 5/31/2026 |
| **Series LLC:** | **Restricted LLC:** |

### Registered AGENT INFORMATION

| | |
|---|---|
| **Name of Individual or Legal Entity:** | CORPORATE CREATIONS NETWORK INC |
| **CRA Agent Entity Type:** | |
| **NV Business ID:** | |
| **Jurisdiction:** | FLORIDA |
| **Street Address:** | 112 NORTH CURRY STREET  Carson City  NV  89703  USA |
| **Mailing Address:** | |

| | |
|---|---|
| **Status:** | Active |
| **Registered Agent Type:** | Commercial Registered Agent |
| **Office or Position:** | |

### OFFICER INFORMATION

☑ View Historical Data

| Title | Name | Address | Last Updated | Status |
|---|---|---|---|---|
| Manager | Gary Metzger | 609 W Dickson St  Suite 102 G  Fayetteville, AR  72701, USA | 05/23/2023 | Active |

Page 1 of 1, records 1 to 1 of 1

[ Filing History ] [ Name History ] [ Mergers/Conversions ]

[ Return to Search ] [ Return to Results ]

# EXHIBIT 5

# DOROTHY JACKS
### CFA, AAS
Palm Beach County Property Appraiser
**We Value What You Value**

Home • Data ▾ • Exemptions ▾ • Departments ▾ • Forms ▾ • About ▾

| Search by Owner Name, Parcel Name, Site Address, or PCN | | | |

Real Property Search   Tangible Property Search   **Search**

🔄 CLOSE TABS    📄 2025 PROPOSED NOTICE    🖨 Print ▾



## PROPERTY DETAIL

Show Full Map   Nearby Sales Search

| | |
|---|---|
| LOCATION ADDRESS | 219 RIDGE RD |
| MUNICIPALITY | JUPITER |
| PARCEL CONTROL NUMBER | 30-43-41-16-02-000-2930 |
| SUBDIVISION | RIDGE AT THE BLUFFS |
| OFFICIAL RECORDS BOOK/PAGE | 28511 / 353 |
| SALE DATE | 08/03/2016 |
| LEGAL DESCRIPTION | RIDGE AT THE BLUFFS IN PB50P47 LT 293 |

## OWNER INFORMATION

| OWNER(S) | MAILING ADDRESS |
|---|---|
| METZGER GARY | 219 RIDGE RD<br>JUPITER FL 33477 9661 |

Change of Mailing Address

## SALES INFORMATION

| SALES DATE | PRICE | OR BOOK/PAGE | SALE TYPE | OWNER |
|---|---|---|---|---|
| 08/03/2016 | $550,000 | 28511 / 00353 | WARRANTY DEED | METZGER GARY |
| 07/28/2016 | $0 | 28424 / 01806 | SUMMARY ORDER | MARSILLIO GRACIELA & |
| 04/01/1999 | $232,000 | 11072 / 01840 | WARRANTY DEED | DIAMOND JULIANA |
| 04/10/1998 | $100 | 10368 / 01170 | QUIT CLAIM | THOMAS DANIEL BUTTAFUOCO REV TR AG |
| 07/01/1990 | $180,000 | 06518 / 00901 | WARRANTY DEED | |
| 02/01/1986 | $139,900 | 04819 / 00126 | WARRANTY DEED | |

NOTE: Sales do not generally appear in the PAPA database until approximately 1 to 3 weeks after the closing date. If a recent sale does not show up in this list, please allow more time for the sale record to be processed.

## EXEMPTION INFORMATION

SAVE OUR HOMES (SOH) BASE YEAR : 2017
EXEMPTION YEAR : 2025

Exemption E File

| APPLICANT/OWNER(S) | YEAR | DETAIL |
|---|---|---|
| METZGER GARY | 2025 | HOMESTEAD |
| METZGER GARY | 2025 | ADDITIONAL HOMESTEAD |

## PROPERTY INFORMATION

Building 1

### SUBAREA AND SQUARE FOOTAGE FOR BUILDING 1

| CODE DESCRIPTION | SQUARE FOOTAGE |
|---|---|
| BAS Base Area | 1889 |
| FOP Finished Open Porch | 36 |
| FOP Finished Open Porch | 162 |
| FGR Finished Garage | 441 |
| **Total Square Footage** | **2528** |
| Area Under Air | 1889 |

| | |
|---|---|
| Number of Units | 1 |
| Total Square Feet* | 2528 |
| Acre❶ | .14 |
| Property Use Code | 0100—SINGLE FAMILY |
| Zoning | R2—SINGLE-FAMILY, DUPLEX (19-JUPITER) |

Request Structural Details Change

*May indicate living area in residential properties.

### STRUCTURAL ELEMENT FOR BUILDING 1

| | |
|---|---|
| Bldg Type | SFR-ZERO LOT |
| Exterior Wall 1 | MSY: CB STUCCO |
| Year Built | 1985 |
| Air Condition Desc. | HTG & AC |
| Heat Type | FORCED AIR DUCT |
| Heat Fuel | ELECTRIC |
| Bed Rooms | 3 |
| Full Baths | 2 |
| Half Baths | 0 |
| Roof Structure | WOOD TRUSS |
| Roof Cover | ASPHALT/COMPOSITION |
| Interior Wall 1 | DRYWALL |
| Interior Wall 2 | N/A |
| Floor Type 1 | CERAMIC/QUARRY TILE |
| Floor Type 2 | CARPETING |
| Stories | 1 |

Print Building 1 Details

### SKETCH FOR BUILDING 1

Print Building 1 Sketch

| PROPERTY EXTRA FEATURES | | | | PROPERTY LAND DETAILS | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | YEAR BUILT | UNITS | | DESCRIPTION | ZONING | ACRES |
| Pool - In-Ground | 1985 | 1 | | 1 | R2 | 0.1359 |
| Sunroom | 1990 | 200 | | SFR | | |

## APPRAISALS

Show 5 Year   Show 10 Year

| TAX YEAR | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|
| Improvement Value | $314,615 | $308,658 | $308,658 | $268,191 | $247,284 |
| Land Value | $530,000 | $530,000 | $503,000 | $387,000 | $264,000 |
| Total Market Value | $844,615 | $838,658 | $811,658 | $655,191 | $511,284 |

All values are as of January 1st each year

## ASSESSED & TAXABLE VALUES

Show 5 Year   Show 10 Year

| TAX YEAR | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|
| Assessed Value | $564,336 | $548,334 | $532,363 | $516,857 | $501,803 |
| Exemption Amount | $50,722 | $50,000 | $50,000 | $50,000 | $50,000 |
| Taxable Value | $513,514 | $498,334 | $482,363 | $466,857 | $451,803 |

## TAXES

Show 5 Year   Show 10 Year

| TAX YEAR | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|
| AD VALOREM | $8,889 | $8,637 | $8,528 | $8,541 | $8,496 |
| NON AD VALOREM | $205 | $194 | $188 | $184 | $178 |
| TOTAL TAX | $9,094 | $8,831 | $8,716 | $8,725 | $8,674 |

Property Tax Calculator   Portability Calculator   Property Tax Details   Tax Collector

BUYERS TAKE NOTE: Taxes will change and often increase substantially when a property sells. The seller's exemption benefits will GO AWAY the year after they sell and this may result in higher taxes for a buyer. Please use the Property Tax Calculator to get a better annual tax estimate if you are purchasing this property.



🏠 Home
📇 Contact Us
📄 Records Custodian

f ✕ ▶ in ⊙ ⌾

### DISCLAIMER

### ADA ACCESS

# EXHIBIT 6

**THIRD AMENDED TOLLING AGREEMENT**

This Third Amended Tolling Agreement ("Third Amended Tolling Agreement"), made as of October 28, 2025, ("Effective Date"), is by and among Zest Labs, Inc. ("Zest"), Zest Labs Holdings, LLC ("Zest Holdings"), Ecoark Holdings, Inc. n/k/a RiskOn International, Inc. ("Ecoark"), Vinson & Elkins L.L.P. ("VE"), Williams Simons & Landis PC ("WSL"), Fred Williams ("Williams"), Michael Simons ("Simons"), Todd Landis ("Landis") and Jonathan Hardt ("Hardt"). Zest, Zest Holdings, Ecoark, VE, WSL, Williams, Simons, Landis and Hardt are sometimes individually referred to as a "Party" and collectively as "Parties."

RECITALS

The Parties desire for their mutual benefit to enter into this Third Amended Tolling Agreement to extend the tolling of all applicable or possibly applicable periods of limitations for another approximately 2.5 month period beyond the 6 month Tolling Period reflected in the Parties' original Tolling Agreement effective August 29, 2024, the 6 month Tolling Period reflected in the Parties' First Amended Tolling Agreement effective February 27, 2025, and the 2 month Tolling Period reflected in the Parties' Second Amended Tolling Agreement effective August 28, 2025.

TERMS

NOW THEREFORE, in consideration of the foregoing recitals, the mutual promises, covenants, rights and obligations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the Parties agree as follows:

1.      The foregoing Recitals are true, accurate, and are incorporated herein by reference.

2.      As used herein, the following terms shall have the following meanings:

(a)      "Tolling Termination Date" means approximately 2.5 months following the Effective Date (January 15, 2026) or (ii) 30 days following receipt of notice from a Party terminating the Tolling Period (defined herein) pursuant to paragraph 5 hereof.

(b)      "Limitations Defense" means any defense to the Claims based upon any statute of limitations, statutes of repose, doctrine of laches, contractual limitations period, and any other defense based upon the passage of time.

(c)      "Tolling Period" means the period of time beginning on the Effective Date through and including the Tolling Termination Date.

(d)      "Claims" means any and all claims Zest, Zest Holdings, and/or Ecoark has or may have, if any, based upon legal services relating to, or arising out of, trade secret litigation against Walmart, Inc. Claims also means all damages recoverable by Zest, Zest Holdings, and/or Ecoark against VE,

WSL, Williams, Simons, Landis or Hardt, if any, relating to the services described in the preceding sentence. Claims also means any and all claims VE, WSL, Williams, Simons, and/or Landis has or may have relating to or arising out of trade secret litigation brought by Zest, Zest Holdings, and/or Ecoark and any and all damages relating to those claims, including claims for payment of legal services in support of such claims. Claims also means any and all claims VE, WLS, Williams, Simons, and/or Landis has or may have for any other claims for unpaid attorney's fees against Zest, Zest Holdings, and/or Ecoark.

(e)    "Legal Proceeding" means a lawsuit or arbitration (to the extent any Claims are subject to arbitration) involving the Claims.

3.    In the event a Legal Proceeding is filed or commenced involving the Claims, computing the period of time that has elapsed when such Legal Proceeding is commenced for purposes of any Limitations Defense related to the Claims shall not include the passage of time during the Tolling Period.

4.    Unless it has been earlier triggered by a Party pursuant to Paragraph 5 hereof, the Tolling Termination Date occurs automatically, and without action by any Party, 2 months following the Effective Date.

5.    Any Party may trigger the Tolling Termination Date at any time by written notice to the other Parties. In the event that a Party notifies the other Parties that it triggers the Tolling Termination Date, the Tolling Termination Date shall be the thirtieth (30th) day following the receipt of notice of triggering of the Tolling Termination Date. All notices given under this Paragraph 5 must be made in accordance with Paragraph 14 hereof.

6.    Upon the expiration of the Tolling Period, any time that may have been running with respect to a Limitations Defense prior to the Effective Date of this Tolling Agreement will resume, and any time that might have begun running with respect to a Limitations Defense during its term, but for this Tolling Agreement, will commence and run as of the termination of the Tolling Period. The termination of the Tolling Period, either 2 months following the Effective Date or by notice as set forth in Paragraph 5, shall occur as to all Parties if it occurs as to any one of them.

7.    Neither Zest, Zest Holdings, Ecoark, VE, WSL, Williams, Simons, Landis nor Hardt shall commence litigation in any way related to the Claims during the Tolling Period except during the seven (7) days before the Tolling Termination Date.

8.    This Tolling Agreement does not:

(a)    revive or in any way affect any limitations period that may have expired as of the Effective Date;

(b)    void any portion of any limitations period that has run prior to the Effective Date;

(c)     constitute an admission, acknowledgement, or agreement by any Party of any wrongdoing of any kind in connection with the Claims; or

(d)     operate (and cannot be construed) as an admission or acknowledgment:

     (i)     of any obligation or liability of any Party, person, or entity to any Party;

     (ii)     of the absence of any obligation or liability of any Party, person, or entity to any Party;

     (iii)     that any Claim is or might be subject to a Limitations Defense at any time in the future; or

     (iv)     of any other fact, matter, or thing except as expressly provided herein.

9.     Except as necessary to enforce this Tolling Agreement, each Party agrees not to offer into evidence or otherwise use this Tolling Agreement or any communications relating to it in any lawsuit or arbitration between or among the Parties.

10.     This Tolling Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter of the possible applicability of any Limitations Defense, and there are no other prior or contemporaneous written or oral agreements, undertakings, promises, warranties, or covenants with respect to any Limitations Defense other than those described herein.

11.     This Tolling Agreement may be amended, modified, or supplemented only by a writing signed by all Parties.

12.     This Tolling Agreement shall be governed by the laws of the State of Texas without regard to any rules or laws concerning choice of laws.

13.     Each of the undersigned represents and warrants that he or she is duly authorized to execute this Tolling Agreement in the capacity therein stated.

14.     Any notice pursuant to this Tolling Agreement shall be delivered by email or by Certified Mail Return Receipt Requested, as follows:

If to Zest, Zest Holdings or Ecoark:   David Wynne
     Wynne Law PLLC
     1800 Bering Dr., Suite 1075
     Houston, TX 77057
     dwynne@wynnepllc.com

If to VE:     Barrett H. Reasoner
     Gibbs & Bruns, LLP
     1100 Louisiana, Suite 5300

Houston, TX 77002
breasoner@gibbsbruns.com

If to WSL, Williams,
Simons or Landis:

Zandra Foley
4400 Post Oak Parkway
Suite 1000
Houston, TX 77027
zfoley@thompsoncoe.com

If to Hardt:

Lucian Pera
Adams and Reese LLP
Crescent Center
6075 Poplar Ave. Suite 700
Memphis, TN 38119
lucian.pera@arlaw.com

15.     This Tolling Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes.  Imaged and facsimile signatures and copies of this Tolling Agreement may be used in lieu of originals and shall not affect the validity or enforceability of this Tolling Agreement.  In making proof of this Tolling Agreement, it shall not be necessary to produce or account for more than one such fully executed counterpart.

16.     The Parties each acknowledge that they have been encouraged to consult with counsel of their choosing about this Agreement, and that they are signing this Agreement of their own free will and after the opportunity to consult their own counsel.

Zest Labs, Inc.

By:_____

Name:_____

Title:_____

Date: _____

Zest Labs Holdings, LLC

By: _____

Name: _____

Title: _____

Date: _____

Ecoark Holdings, Inc., n/k/a RiskOn International, Inc.

By: _____

Name: _____

Title: _____

Date: _____

Vinson & Elkins L.L.P.

By:_____

Name:_____

Title:_____

Date: _____

Williams Simons & Landis PC

By:

Name:  Fred I. Williams

Title:  Founding partner

Date: October 23, 2025

Fred Williams

Name:

Date:  October 23, 2025

Michael Simons

Name:_____

Date: _____

Todd Landis

Name: _____

Date: _____

Jonathan Hardt

Name:_____

Date: _____

# EXHIBIT 7

| | |
|---|---|
| **From:** | Foley, Zandra <zfoley@thompsoncoe.com> |
| **Sent:** | Monday, January 5, 2026 7:34 PM |
| **To:** | David Wynne |
| **Subject:** | Re: Zest [IMAN-TCLAW.FID2345768] |

Ok

---

**From:** David Wynne <dwynne@wynnepllc.com>
**Sent:** Monday, January 5, 2026 7:17:18 PM
**To:** Foley, Zandra <zfoley@thompsoncoe.com>
**Subject:** Re: Zest [IMAN-TCLAW.FID2345768]

It will read the same as the most recent one. Will send in the morning.

David Wynne
832-465-4654 (cell)
713-227-8835 (work)
Sent from my iPhone

> On Jan 5, 2026, at 6:43 PM, Foley, Zandra <zfoley@thompsoncoe.com> wrote:
>
> Yes. They are fine with tolling but may want some changes to the agreement. If you can just send the agreement I'll see what they want to change.
> Z

---

**From:** David Wynne <dwynne@wynnepllc.com>
**Sent:** Monday, January 5, 2026 5:49:44 PM
**To:** Foley, Zandra <zfoley@thompsoncoe.com>
**Cc:** Nye, Zachary <ZNye@thompsoncoe.com>
**Subject:** RE: Zest [IMAN-TCLAW.FID2345768]

Are you guys back in the office? I need an answer to this request asap.

**From:** David Wynne
**Sent:** Friday, January 2, 2026 5:55 PM
**To:** Zandra Foley <zfoley@thompsoncoe.com>
**Cc:** Zachary Nye <ZNye@thompsoncoe.com>
**Subject:** Re: Zest [IMAN-TCLAW.FID2345768]

V&E is agreeable to 60 day extension to the tolling agreement. Are your people also agreeable?

1

David Wynne
832-465-4654 (cell)
713-227-8835 (work)
Sent from my iPhone

On Dec 30, 2025, at 9:48 AM, David Wynne <dwynne@wynnepllc.com>
wrote:

 Zandra, I'm in discussions to extend the tolling agreement one more time
with V&E. Let me know if your clients would be amenable to that. I've asked
V&E for a limited set of underlying records connected with their time records
for work related to the jury charge and damage modeling. It's going to take
them a while to get me the records I want before I can advise my clients
further related to a potential settlement. Not sure how long the extension is
going to be yet, but I should know relatively soon. Our current agreement
expires the 15th. Pls let me know if your clients will agree to an extension to
allow for that exchange of information and related analysis. I will follow up
regarding the length of the extension once I hear back from V&E. Also would
still welcome a response on the settlement front. Don't intend for that to
slow down with your folks. And if you have lost contact with them entirely pls
let me know that asap.

David Wynne
832-465-4654 (cell)
713-227-8835 (work)
Sent from my iPhone

On Dec 22, 2025, at 5:52 PM, David Wynne
<dwynne@wynnepllc.com> wrote:


Appreciate the update although it's concerning.

David Wynne
832-465-4654 (cell)
713-227-8835 (work)
Sent from my iPhone

On Dec 22, 2025, at 2:33 PM, Foley, Zandra
<zfoley@thompsoncoe.com> wrote:


Hey David:

2

I'm unfortunately have not been able to catch up with my clients yet. I'm still trying. I'll let you know as soon as I hear something.

z

Zandra Foley • Partner
4400 Post Oak Parkway, Suite 1000, Houston, TX 77027
o: 713-403-8200
bio • vCard • web

**From:** David Wynne <dwynne@wynnepllc.com>
**Sent:** Wednesday, December 17, 2025 12:04 PM
**To:** Foley, Zandra <zfoley@thompsoncoe.com>
**Cc:** Nye, Zachary <ZNye@thompsoncoe.com>
**Subject:** RE: Zest

Don't know how there was a disconnect. We are not responding to any demand for my client to pay your clients anything. That is a non-starter, which I explained to you over the phone. You asked whether policy limits could get this done, and I said I would take such an offer to my client and strongly consider that. My client is not going to respond to anything less than that. You said you would talk to your clients and get back to me on that score. That was nearly a month ago, and I have repeatedly attempted to follow up with you. You even suggested a call, which I have been willing to have, including on the specific day you proposed, but you never called me. This case has a $200M damage model. I understand the complexities and difficulties of collecting a judgment against individual lawyers, but we are by no means deterred from doing so after a lawsuit gets filed. If we don't get this figured out soon, the top is going to come off on this, and the pre-litigation opportunity to put this issue behind your clients will be gone.

**From:** Foley, Zandra <zfoley@thompsoncoe.com>
**Sent:** Wednesday, December 17, 2025 11:24 AM
**To:** David Wynne <dwynne@wynnepllc.com>
**Cc:** Nye, Zachary <ZNye@thompsoncoe.com>
**Subject:** RE: Zest

I know. I think there was a disconnect. I think they were looking for a response to their demand. But

as I read your email, you were looking for another offer from us. So, just so I'm clear, you are not going to respond to their demand with a new demand. You just want them to make a different offer?

z

<image001.png> Zandra Foley • Partner
4400 Post Oak Parkway, Suite 1000, Houston, TX 77027
o: 713-403-8200
bio • vCard • web

**From:** David Wynne <dwynne@wynnepllc.com>
**Sent:** Tuesday, December 16, 2025 1:57 PM
**To:** Foley, Zandra <zfoley@thompsoncoe.com>
**Cc:** Nye, Zachary <ZNye@thompsoncoe.com>
**Subject:** RE: Zest

Zandra,

The delay on this is getting out of hand. Do you have access to your clients? About to have to move on, which would be unfortunate if from lack of ability to communicate with your clients.

--David

**From:** Foley, Zandra <zfoley@thompsoncoe.com>
**Sent:** Wednesday, December 10, 2025 4:15 PM
**To:** David Wynne <dwynne@wynnepllc.com>
**Cc:** Nye, Zachary <ZNye@thompsoncoe.com>
**Subject:** RE: Zest

Yes, and I was hoping to have an answer back and nothing yet. I'll ping them again. I just didn't have anything to report yet.

z

<image001.png> Zandra Foley • Partner
4400 Post Oak Parkway, Suite 1000, Houston, TX 77027
o: 713-403-8200
bio • vCard • web

**From:** David Wynne <dwynne@wynnepllc.com>
**Sent:** Wednesday, December 10, 2025 4:06 PM
**To:** Foley, Zandra <zfoley@thompsoncoe.com>

**Cc:** Nye, Zachary <<u>ZNye@thompsoncoe.com</u>>
**Subject:** Fw: Zest

Zandra, I left you a voicemail yesterday. Let me know if we are done talking or not. Haven't heard from you since you said you'd call me. Also no response to my emails or call.

--David

**From:** David Wynne <<u>dwynne@wynnepllc.com</u>>
**Sent:** Wednesday, December 3, 2025 1:16 PM
**To:** Foley, Zandra <<u>zfoley@thompsoncoe.com</u>>; Nye, Zachary <<u>ZNye@thompsoncoe.com</u>>
**Subject:** RE: Zest

Zandra, are you around today to visit?

**From:** Foley, Zandra <<u>zfoley@thompsoncoe.com</u>>
**Sent:** Monday, December 1, 2025 6:10 PM
**To:** David Wynne <<u>dwynne@wynnepllc.com</u>>; Nye, Zachary <<u>ZNye@thompsoncoe.com</u>>
**Subject:** RE: Zest

No, we did. Let me call you tomorrow. I think your comments sparked some questions about what it would ultimately take to get this done and I want to discuss that with you.

z



Zandra Foley • Partner

4400 Post Oak Parkway, Suite 1000, Houston, TX 77027

o: 713-403-8200

<u>bio</u> • <u>vCard</u> • <u>web</u>

Zandra,

I had the impression based on our last conversation that you were going to visit with your group and get back to me again about potential resolution.  If I misunderstood that, please let me know. Otherwise, please get back to me as soon as you are able – hopefully no later than the end of the week.

Regards,

David

**Confidentiality Notice:** This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information exempt from disclosure under applicable law. Unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy the original and all copies of the message. Thank you.

Tax Advice Disclosure: Any U.S. federal tax advice contained in this communication, including any attachment(s), unless expressly stated otherwise, was and is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**ZEST LABS, INC., et al**                                                    **PLAINTIFFS**

**V.**                                    **4:18CV00500 JM**

**WALMART INC.**                                                              **DEFENDANT**

## ORDER

Pending are Walmart's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial (ECF No. 407); Walmart's Motion to Dismiss, or Alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees (ECF No. 507); and Walmart's Motion to Unseal the Motion to Dismiss, or alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees and the Accompanying Brief (ECF No. 511).

Federal Rule of Civil Procedure 59(e) permits a party to move to alter or amend a judgment, upon a timely motion. *See* Fed. R. Civ. P. 59(e). A district court has broad discretion in determining whether to grant or deny a motion to alter or amend under Rule 59(e). *See U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Such motions are intended to correct manifest errors of law or fact, or to present newly discovered evidence. *See id.* The standard for Rule 59(e) and Rule 60(b)(2) motions, which seek relief from a final judgment or an order due to newly discovered evidence, are the same. *See id.*

To prevail, the movant must show: (1) the evidence was discovered after the proceeding; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that it would likely produce a

different result. *See U.S. Xpress Enter., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 815 (8th Cir. 2003).

As stated previously, Zest's failure to disclose that it had notice of Walmart's patent application before it was published is evidence that Walmart could not have discovered prior to trial. Walmart exercised due diligence to discover the evidence. However, the evidence was not made available to Walmart until Zest filed its motion for attorneys' fees on April 27, 2021. Regardless of the motive or lack thereof, the Court finds that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching. After reviewing the post-trial discovery and having presided over the trial, the Court finds that this evidence would probably produce a different result at trial. After review of the pending motions, the thorough briefing of the issues, and the law, the Court finds that Walmart's motion for new trial pursuant to Rule 59 and Rule 60(b)(2) should be granted.

Walmart's motion for sanctions and attorneys' fees is taken under advisement. Walmart's motion to dismiss is taken under advisement. The parties are ordered to mediation within ninety (90) days before a private mediator or United States Magistrate Judge Patricia S. Harris.

Walmart's motion to unseal the Motion to Dismiss, or Alternatively for New Trial, and the Accompanying Brief is granted. The motion and brief do not include privileged material and there is no compelling reason to override the public's right to access the documents.

In conclusion, Walmart's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial (ECF No. 407) and Walmart's Motion to Dismiss, or Alternatively, for a New Trial and Accompanying Sanctions, and for Attorney's Fees (ECF No. 507) are GRANTED in part and DENIED in part. The Motion to Unseal (ECF No. 511) is GRANTED. The Clerk is directed to unseal ECF Nos. 507 and 508.

2

IT IS SO ORDERED this 22nd day of December 2023.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

ZEST LABS, INC., et al                  **PLAINTIFFS**

**V.**            **4:18CV00500 JM**

WALMART INC.                    **DEFENDANT**

### ORDER

Pending are the motions to clarify filed by Plaintiffs and Plaintiffs' former counsel, Williams, Simons and Landis ("WSL"), Plaintiffs' motion for limited discovery and to modify scheduling order, and Walmart's motion for summary judgment.

Potential Sanctions

The Court is considering sanctions against Plaintiffs and Plaintiffs' former counsel, WSL, Michael Simons, Todd Landis, Jonathan Hardt, and Fred Williams for misrepresentations to the Court about Plaintiffs' and their counsels' knowledge of the Bohling patent application. The misrepresentation was made at various times to the Court about the timing of their knowledge of Walmart's application for the Bohling patent before trial, including docket entry # 247. In reliance on the misrepresentation or misrepresentations, the Court refused to allow Walmart to argue to the jury that Zest knew about the patent application and did not attempt to stop its publication. Walmart should have been allowed to make that argument at trial. The Court has found that Zest's failure to disclose that it had notice of Walmart's patent application before it was published was material and not merely cumulative or impeaching and that this evidence would probably produce a different result at trial. The Court has the inherent authority and authority under Rule 11 to order a party and its attorneys to pay sanctions in the form of attorneys' fees reasonably incurred because of a misrepresentation. In addition, the Court has

authority pursuant to 28 U.S.C. § 1927 to order an attorney to personally pay the opposing

party's attorneys' fees where the attorney's conduct has multiplied the proceedings

unreasonably.

In conclusion, the motions to clarify filed by Plaintiffs and WSL (ECF Nos. 566 and 570)

are GRANTED. Walmart is directed to file the underlying invoices for the attorneys' fees

requested by the Court. The remaining motions will be ruled upon separately.

IT IS SO ORDERED this 23rd day of October, 2024.

James M. Moody Jr
United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAMS SIMONS & LANDIS PC, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-CV-00034 |
| | § | |
| RISKON INTERNATIONAL, INC. F/K/A | § | |
| ECOARK HOLDINGS, INC., ECOARK, | § | |
| INC., ZEST LABS HOLDINGS LLC, ZEST | § | |
| LABS, INC., F/K/A INTELLEFLEX CORP., | § | |
| AND BARTKO PAVIA LLP, | § | |
| | § | |
| *Defendants* | § | |

# DECLARATION OF DAVID E. WYNNE

I declare, under penalty of perjury, that the following is true and correct:

1. I am a licensed attorney in the State of Texas practicing with Wynne Law PLLC.  I am counsel for Defendants RiskOn International, Inc., Ecoark Holdings, Inc., Zest Labs Holdings, LLC and Zest Labs, Inc.

2. Attached to Defendants' Motion to Dismiss are true and correct copies of the following documents:

    Exhibit 1:    File-Stamped copy of original petition filed in the State Court Case.

    Exhibit 2:    Order Remanding the State Court Case.

    Exhibit 3:    Miami-Dade County Property Records for V&E Partner Samara Shepherd and her Florida Bar Member Profile Page.

    Exhibit 4:    Nevada Secretary of State Filing for Zest Labs Holdings, LLC.

    Exhibit 5:    Palm Beach County Property Records for Gary Metzger.

    Exhibit 6:    Third Amended Tolling Agreement.

    Exhibit 7:    1/5/26 Email from counsel for Williams Simons & Landis.

Exhibit 8:    December 22, 2023 Order from Walmart Case vacating judgment.

Exhibit 9:    October 23, 2024 Order from Walmart Case regarding Sanctions.


Dated: March 2, 2026

_____/s/ David E. Wynne_____
David E. Wynne