**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **WILLIAMS SIMONS & LANDIS PC,** §<br>*Plaintiff* §<br> §<br>**v.** §<br> §<br>**RISKON INTERNATIONAL, INC. F/K/A ECOARK HOLDINGS, INC., ECOARK, INC., ZEST LABS HOLDINGS LLC, ZEST LABS, INC., F/K/A INTELLEFELEX CORP., and BARTKO PAVIA LLP,** §<br>*Defendants* § | **No. 1:26-CV-34-RP** |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Bartko Pavia LLP's ("Bartko") motion to dismiss, Dkt. 17, Defendants RiskOn International, Inc., Ecoark, Inc., Zest Labs Holdings, LLC and Zest Labs, Inc.'s (collectively, the "Zest Defendants") motion to dismiss, Dkt. 19, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant Bartko's motion to dismiss, Dkt. 17, and deny the Zest Defendants' motion to dismiss, Dkt. 19.

## I.    BACKGROUND

Plaintiff Williams Simons & Landis PC ("WSL") initiated this lawsuit based on the Zest Defendants' failure to pay WSL attorneys' fees arising from a separate case

1

in Arkansas. Dkt. 1, at 2. In that trade-secret litigation (the "Walmart Litigation"), WSL represented the Zest Defendants in suing Walmart, Inc. ("Walmart"). *Id.* at 6; Dkt. 17-7.[1] WSL alleges that under the contract between the Zest Defendants and WSL—a spinoff of Vinson and Elkins, LLP ("V&E"), the firm originally hired to represent the Zest Defendants in the Walmart Litigation—WSL is entitled to attorneys' fees from any recovery even though the Zest Defendants fired WSL before obtaining such recovery. Dkt. 1, at 6-7. After WSL originally obtained a $115 million jury verdict for the Zest Defendants, the judge in the Walmart Litigation granted Walmart's request for a new trial after it became apparent through WSL's motion for attorneys' fees that the Zest Defendants had failed to disclose that they "had notice of Walmart's patent application before it was published," which if revealed, "would probably produce a different result at trial." *Id.* at 8-9; *Zest Labs, Inc. v. Walmart Inc.*, No. 4:18CV00500 JM, 2023 WL 8878223, at *1 (E.D. Ark. Dec. 22, 2023). The judge in the Walmart Litigation also considered sanctioning the Zest Defendants and WSL over two-million dollars "for their misrepresentation to the Court regarding their knowledge of the Walmart Patent Application and the timing of their knowledge." Dkt. 17-6.[2]

---

[1] The Zest Defendants also retained WSL to represent them in a third lawsuit (the "Deloitte Case"). Dkt. 1, at 9. WSL alleges that the Zest Defendants also failed to fully pay WSL for attorneys' fees arising from that litigation. *Id.* at 13-14.

[2] The Zest Defendants have since brought claims of negligence and breach of fiduciary duty against V&E and WSL in a pending state-court case in Harris County (the "Harris County Case"), claiming that the law firms "bungled the representation of Zest [in the Walmart Litigation] from the start." Dkt. 19, at 17. V&E filed counterclaims in that case, in which it also seeks to collect a portion of the settlement awarded to the Zest Defendants in the Walmart Litigation. Dkt. 30-2.

The Zest Defendants retained Bartko and other counsel to represent them in the new trial ordered in the Walmart Litigation, and WSL "dutifully assisted the new lawyers in taking over the" litigation. Dkt. 1, at 10. After a second trial, the Zest Defendants obtained a $223 million jury verdict "using the same evidentiary record originally created by WSL." *Id.* The parties then entered into a settlement agreement that disposed of the entire dispute at issue in the Walmart Litigation. *Id.* WSL believes that it is owed a portion of the settlement proceeds for its work previously representing the Zest Defendants in that case. *Id.* at 11. WSL now brings claims for breach of contract and unjust enrichment against the Zest Defendants for their failure to pay attorneys' fees to WSL in the Walmart Litigation and the Deloitte Case. *Id.* at 11-14, 17-18. WSL also brought claims for tortious interference with contractual relations and unjust enrichment against Bartko for its alleged role in depriving WSL of fees. *Id.* at 15-18.

Bartko and the Zest Defendants filed motions to dismiss. Dkts. 17; 19. In its motion to dismiss, Bartko argues that WSL's claims against it are barred by the doctrine of attorney immunity and otherwise fail to state a claim. Dkt. 17, at 5-18. The Zest Defendants argue that WSL's claims should be dismissed for failure to join a required party whose presence would destroy diversity jurisdiction and, alternatively, for failure to state a claim. Dkt. 19, at 4-14. The undersigned addresses each motion to dismiss below.

## II.    LEGAL STANDARDS

### A.    12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

4

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B.      12(b)(7)

Under Rule 12(b)(7), a court may dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19, in turn, provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. Fed. R. Civ. P. 19. Evaluating a motion to dismiss under Rule 12(b)(7) analysis entails a two-step inquiry. *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, a court must determine whether a party must be joined to the suit under Rule 19(a). *Id.* If joinder is required, the party will be brought into the lawsuit. *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). At this step, the movant has the initial burden of showing that a missing party is required. *Hood*, 570 F.3d at 628. But after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls

5

on the party who opposes joinder." *Id.* (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)). If a required party cannot be joined without destroying subject-matter jurisdiction, the court must then look to Rule 19(b) to determine whether the party is "indispensable, that is, whether litigation can be properly pursued without the absent party." *Id.* at 629 (quotation omitted). In other words, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

## C.    *Colorado River* **Abstention**

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The *Colorado River* doctrine, however, requires courts to "giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation" by abstaining from a case where "a similar action is pending in state court." *Lemery v. Ford Motor Co.*, 205 F. Supp. 2d 710, 713-15 (S.D. Tex. 2002) (citing *Colo. River*, 424 U.S. at 817). "Courts evaluating a request for *Colorado River* abstention must be satisfied that (1) there is a parallel proceeding pending in state court and (2) 'exceptional circumstances' warrant abstention." *Bates v. Laminack*, 938 F. Supp. 2d 649, 662 (S.D. Tex. 2013) (citations omitted). If the competing state and federal cases are sufficiently parallel, the Court evaluates the following six factors to evaluate whether exceptional circumstances warrant abstention:

1) assumption by either court of jurisdiction over a res, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014). No single factor is determinative, and the Court  must not treat the factors as a "mechanical checklist," but rather engage in a "careful balancing" of the factors "as they apply in a given case." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 851 (5th Cir. 2009); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The Fifth Circuit has emphasized that even when there are "truly parallel cases" pending in a state and federal court, "only the clearest of justifications will warrant [abstention]." *RepublicBank Dall. Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (citing *Colo. River*, 424 U.S. at 819). The party seeking a discretionary stay or dismissal bears the burden of proving that an adequate justification exists for such action. *See United States v. Armstrong*, 784 F. Supp. 356, 360 (N.D. Tex. 1991) (citations omitted). Whether to decline to decide an action under one of the abstention doctrines is in the federal court's discretion. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 n.7 (5th Cir. 2006) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

### III.    DISCUSSION

**A.    Bartko's motion to dismiss should be granted on the basis of attorney immunity.**

Bartko moves to dismiss WSL's claims against it, arguing that they are barred by the doctrine of attorney immunity and fail to state a claim. Dkt. 17, at 6-16. WSL counters that Bartko's alleged conduct falls outside the scope of attorney immunity and insists that it adequately pleaded its claims for tortious interference with contract and unjust enrichment against Bartko. Dkt. 21, at 3-12. In reply, Bartko maintains that the claims against it are barred because they arise from Bartko's alleged conduct while acting as counsel for the Zest Defendants, which falls outside any exception to the doctrine of attorney immunity. Dkt. 11, at 2-6.

Under Texas law, a third party generally may not hold an attorney liable for conduct undertaken in the representation of a client. *See, e.g.*, *Alpert v. Crain, Caton & James, PC*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). This general rule is designed to encourage "loyal, faithful, and aggressive representation by attorneys employed as advocates," which might be compromised if attorneys were subject to suit by third parties. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). An attorney is thus "given latitude to 'pursue legal rights that he deems necessary and proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Id.* at 483 (quoting *Alpert*, 178 S.W.3d at 405). The scope of the rule turns "on the type of conduct in which the attorney engages, rather

than on whether the conduct was meritorious in the context of the underlying lawsuit." *Renfroe v. Jones & Assoc.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied); *see also Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (noting that an attorney is generally immune from suit for conduct that "require[s] the office, professional training, skill, and authority of an attorney").

While conduct that is within the scope of legal representation falls within attorney immunity, actions that "do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client'" do not fall within the doctrine's scope. *Cantey Hanger*, 467 S.W.3d at 481-83 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, PC*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)). "An attorney seeking dismissal based on immunity bears the burden of establishing entitlement to the defense" by "'conclusively establish[ing] that the alleged conduct was within the scope of the attorney's legal representation of the client.'" *Ironshore Eur. DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019) (citing *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017); *Santiago v. Mackie Wolf Zientz & Mann, PC,* No. 05-16-00394-CV, 2017 WL 944027, at * 3 (Tex. App.—Dallas Mar. 10, 2017, no pet.)). Attorney immunity is properly granted at the motion-to-dismiss phase "where the scope of the attorney's representation—and thus entitlement to the immunity—is apparent on the face of the complaint." *Id.* at 763-64 (citing *Santiago*, 2017 WL 944027, at * 3).

Here, Bartko's entitlement to attorney immunity is evident from the face of WSL's complaint. WSL brings claims against Bartko for tortious interference with contractual relations and unjust enrichment based on Bartko's "conduct and communications" with the Zest Defendants that "interfere[ed] with the required payment for its performance of legal services under the agreements," which resulted in Bartko retaining control of "settlement proceeds" that WSL claims it is owed. Dkt. 1, at 15-18. WSL's allegations thus center on Bartko's legal advice to the Zest Defendants and management of the settlement proceeds of the Walmart Litigation, both of which fall within the ambit of conduct undertaken in the representation of a client. *See id.*; *Highland Cap. Mgmt., LP v. Looper Reed & McGraw*, PC, No. 05–15–00055–CV, 2016 WL 164528, at *6 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (noting that "advising a client on a course of action" is "the kind[] of action[] that [is] part of the discharge of an attorney's duties in representing a party" (citing *Alpert*, 178 S.W.3d at 406)); *Ridgeway v. MedFinManager, LLC*, 716 S.W.3d 937, 949 (Tex. App.—San Antonio 2025, pet. denied) (explaining that "disbursing settlement funds to or on behalf of a client is the type of conduct within the scope of representation").

WSL insists that its allegations against Bartko fall outside the realm of attorney immunity because "[c]onduct undertaken to increase a lawyer's own financial recovery from settlement funds is not the type of advocacy or legal judgment the attorney-immunity doctrine was designed to protect." Dkt. 21, at 5-6. Yet the cases WSL cites in support of this argument do not stand for such a proposition. *Id.* at 6 (citing *Cantey*, 467 S.W.3d at 482; *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134,

10

138 (1882)).[3] In *Cantey*, for example, the Supreme Court of Texas concluded that an attorney's actions in transferring ownership of a plane awarded to his client in a divorce proceeding fell within the scope of the attorney's legal representation of his client, even where the complained-of conduct included making "intentional misrepresentations in the bill of sale made for the purpose of shifting tax liability." 467 S.W.3d at 485.

Here, similarly, the complained-of conduct in managing the settlement proceeds in such a way as to prevent WSL from collecting fees falls within the scope of Bartko's representation of the Zest Defendants in the Walmart Litigation. Dkt. 1, at 15-17. WSL's description of Bartko's actions as "wrongful" and motivated by an "independent pecuniary motive" does not change the fact that they were undertaken as part of Bartko's legal representation of the Zest Defendants and were "not foreign to the duties of an attorney." *Id.*; *Cantey*, 467 S.W.3d at 485 ("[A]n attorney's conduct may be wrongful but still fall within the scope of client representation."); *see also Youngkin v. Hines*, 546 S.W.3d 675, 682 (Tex. 2018) (finding attorney accused of entering into settlement agreement on behalf of clients who "had no intention to comply" and then helping clients "avoid compliance with the agreement" was protected by attorney immunity because the "complained-of actions were part of his responsibility to his clients, even if done improperly"); *see also Taylor v. Tolbert*, 644

---

[3] In *Poole*, the Supreme Court of Texas recognized that attorney immunity did not apply to "the fraudulent assignment of [a] bill of lading" because "consummating the fraud" was "entirely foreign to the duties of an attorney." *Poole*, 58 Tex. at 137. Here, WSL does not allege or argue that Bartko's conduct constituted fraud, so the exception to attorney immunity for "independently fraudulent activities" does not apply here. *See* Dkts. 1; 21; *Cantey*, 467 S.W.3d at 483.

S.W.3d 637, 646 (Tex. 2022) ("'Foreign to the duties' does not mean something a good attorney should not do; it means that the attorney is acting outside his or her capacity and function as an attorney." (citations omitted)). WSL does not offer any other legal authority demonstrating that Bartko's self-interest in distributing the settlement funds to increase its own recovery brings Bartko's conduct outside of the conduct typically recognized as falling within attorney immunity. The undersigned thus rejects WSL's argument that Bartko's conduct is "precisely the type of behavior" that Texas courts recognize as foreign to the duties of an attorney. Dkt. 21, at 5.

WSL argues that "[a]t minimum," the Court should decline to resolve Bartko's attorney-immunity defense at the pleading stage because Bartko's entitlement to attorney immunity depends on the facts surrounding the conduct at issue. Dkt. 21, at 7. WSL insists that courts "routinely" deny motions to dismiss on attorney-immunity grounds where "the complaint plausibly alleges that the attorney acted to advance the attorney's own financial interests rather than the client's legal interests." *Id.* (citing *Taylor*, 644 S.W.3d at 637).[4] In *Taylor*, however, the Supreme Court of Texas found that an attorney was entitled to immunity *at the summary judgment phase* on state wiretapping claims, but not analogous federal claims since it was "not convinced that federal courts would apply Texas's common-law attorney-immunity defense to

---

[4] WSL also cited *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024), for the proposition that "the Court cannot determine at the pleading stage whether Bartko was acting in the legitimate discharge of legal representation or instead engaging in self-interested conduct foreign to the duties of an attorney." Dkt. 21, at 7. Yet in *Hodge*, the Fifth Circuit affirmed the conversion of a motion to dismiss into a motion for summary judgment when evaluating whether defendants were entitled to qualified immunity on excessive-force claims based on video evidence that blatantly contradicted the allegations in the complaint. 90 F.4th at 843-47. It is unclear how *Hodge* supports WSL's arguments against dismissal here.

that [federal] statute." *Taylor*, 644 S.W.3d 657. As explained above, claims are properly dismissed at the motion-to-dismiss phase based on attorney immunity where, as here, "the scope of the attorney's representation—and thus entitlement to the immunity—is apparent on the face of the complaint." *Ironhorse*, 912 F.3d at 763-64 (citing *Santiago*, 2017 WL 944027, at *3). Indeed, even accepting WSL's allegations as true—that Bartko intentionally excluded WSL from receiving a portion of the settlement funds to increase Bartko's own share—Bartko has demonstrated that this conduct nonetheless falls within the scope of attorney immunity. Bartko's motion to dismiss should be granted.

**B.    The Zest Defendants' motion to dismiss should be denied.**

The Zest Defendants offer three bases for dismissal of WSL's claims against them, arguing that this case should be dismissed either because WSL failed to add a required party, *Colorado River* abstention requires this Court to abstain from resolving this case while the Harris County Case proceeds, and WSL fails to state a claim. Dkt. 19, at 4-14. The undersigned evaluates each of these arguments below and concludes that the Zest Defendants' motion to dismiss should be denied.

1.    V&E is not a required party to this litigation under Rule 19.

The Zest Defendants first moved to dismiss this case under Rule 12(b)(7), arguing that this case should be dismissed because V&E is a required party whose joinder would destroy diversity jurisdiction. Dkt. 19, at 5-7. WSL responds that V&E is not a required party, and that in any event, the Zest Defendants could implead V&E without destroying diversity jurisdiction if they believed its presence was

13

necessary to this litigation. Dkt. 23, at 5-14. The Zest Defendants reply that because they seek to recover from the same settlement proceeds under identical engagement agreements, V&E is in fact an indispensable party to this lawsuit and WSL may not force the Zest Defendants to implead V&E to cure the jurisdictional defect V&E's presence would provoke. Dkt. 24, at 3-4.

First, the Court must decide whether the absent party is a required party to the action. *See* Fed. R. Civ. P. 19(a). Under Rule 19(a), a person subject to service of process "whose joinder will not deprive the court of subject-matter jurisdiction" must be joined if: (1) "in that person's absence, the court cannot accord complete relief among existing parties"; or (2) "disposing of the action in the person's absence" would "impair or impede" that person's ability to protect a claimed interest or "leave an existing party subject to a substantial risk of incurring ... inconsistent obligations." Fed. R. Civ. P. 19(a)(1). Here, the Zest Defendants argue that V&E is a required party because the Harris County Case exposes them to "a substantial risk of double payment or inconsistent obligations" as to whether the Zest Defendants owe WSL or V&E any portion of the Walmart Litigation settlement proceeds. Dkt. 19, at 5. WSL responds that because its claims arise from its own agreements with the Zest Defendants, which are separate from the agreement executed between V&E and the Zest Defendants, "[a]ny separate dispute involving V&E's compensation would arise from different contractual rights and would not create mutually incompatible obligations." Dkt. 23, at 6-7.

Here, although V&E has an interest in "the subject of th[is] action," the settlement proceeds from the Walmart Litigation, it does not follow that the resolution of this case in V&E's absence poses a substantial risk of the Zest Defendants incurring "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Although WSL and V&E's agreements seek contingency fees under the "same terms," their rights nonetheless arise from separate contracts and pertain to separate work performed for the Zest Defendants during the Walmart Litigation since V&E's claim for proceeds would only relate to its work on the case before WSL took over as counsel to the Zest Defendants in that lawsuit. Dkt. 1, at 6-8. The Zest Defendants' claim that "one court could ultimately determine that an additional contingent fee is owed while the other court rules no additional fee is owed from the Walmart [Litigation]" fails to acknowledge that "'[i]nconsistent obligations' are not equivalent to inconsistent adjudications or results." *Inmobiliaria Axial, S.A. de C.V. v. Robles Int'l Servs., Inc.*, No. EP-07-CA-00269KC, 2007 WL 2973483, at \*6 (W.D. Tex. Oct. 11, 2007) (citing *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

While inconsistent obligations occur when " a party cannot comply with one court's order without breaching the order of another court that pertains to the same incident," inconsistent adjudications occur when "a defendant successfully defends a claim in one forum, yet loses in another forum on another claim arising from the same incident." *Inmobiliaria Axial*, 2007 WL 2973483, at \*6 (citations omitted); *see also Delgado,* 139 F.3d at 3 ("Unlike a risk of inconsistent obligations, a risk that a

15

defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a)." (citation omitted)). Here, the Zest Defendants' concern relates to the possibility of the inconsistent adjudication of the issue of whether V&E and WSL are owed additional compensation from the Walmart Litigation settlement proceeds, not the imposition of inconsistent obligations which is the concern of Rule 19(a). *Inmobiliaria Axial*, 2007 WL 2973483, at \*6 ("It is the threat of inconsistent obligations not multiple litigation that is the concern of Federal Rule 19(a)." (citations omitted)). Moreover, as WSL points out, any overlap in V&E's and WSL's claims for fees—which is unlikely given that they represented the Zest Defendants at separate times in the Walmart Litigation—can  be resolved through offset or allocation. Dkt. 23, at 11; *Power Equities, Inc. v. Atlas Telecom Servs.-USA, Inc.*, No. 3:06-CV-1892-G, 2007 WL 43843, at \*4 n.2 (N.D. Tex. Jan. 5, 2007) ("The potential for multiple recoveries against one defendant does not make all other potential plaintiffs necessary parties." (citing *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997), *cert. denied*, 522 U.S. 818 (1997))). The Zest Defendants have thus failed to demonstrate that V&E is a required party under Rule 19(a). *Hood*, 570 F.3d at 628 (noting that "the party advocating joinder has the initial burden of demonstrating that a missing party is necessary").

Because the Zest Defendants have not demonstrated that V&E is a required party under Rule 19(a)(1), "no inquiry under Rule 19(b) is necessary." *United States*

*v. Donovan*, No. 4:19-cv-00761, 2020 WL 1677388, at *3 (E.D. Tex. Apr. 6, 2020) ("If joinder is not necessary under the threshold requirements of Rule 19(a), then no inquiry under Rule 19(b) is necessary."). The Zest Defendants' motion to dismiss WSL's claims under Rule 12(b)(7) should be denied.

        2.     *Colorado River* abstention does not apply here.

The Zest Defendants next argue that this Court should abstain from exercising jurisdiction over this case under *Colorado River* based on the pending Harris County Case. Dkt. 19, at 7-10; 424 U.S. 800. WSL responds that *Colorado River* abstention is inapplicable here because the Harris County Case is not "parallel" to this one because it does not involve substantially similar parties or issues, and the factors relevant to whether exceptional circumstances warrant abstention under *Colorado River* weigh in favor of this Court exercising jurisdiction over this case. Dkt. 23, at 15-18. In reply, the Zest Defendants maintain that abstention under *Colorado River* is justified here. Dkt. 24, at 4-6.

*Colorado River* abstention is a narrow exception to a federal court's "virtually unflagging" duty to adjudicate a controversy that is properly before it, reserved for "exceptional circumstances." *Colo. River*, 424 U.S. at 813; *Kelly Inv. Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002). To determine whether to abstain under *Colorado River*, courts must first determine whether the state and federal cases are "sufficiently parallel to make consideration of abstention proper." *Afr. Methodist*, 756 F.3d at 797 (stating that consideration of parallelism is "an initial step prior to application of the *Colorado River* factors"). Parallel proceedings are actions

17

"involving the same parties and the same issues." *McIntosh*, 828 F.2d at 1121 (citing *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)). "Any doubt regarding the parallel nature of the state-court suit should be resolved in favor of exercising jurisdiction." *Rimkus Consulting Grp., Inc. v. Cammarata*, No. H-07-0405, 2007 WL 4223434, at *4 (S.D. Tex. Nov. 29, 2007) (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)).

Here, the Zest Defendants argue that a "careful balancing" of all six factors "confirms that this case belongs in state court." Dkt. 19, at 7. WSL responds that this case and the Harris County Case are not sufficiently parallel to warrant abstention, and that in any event, the six factors used to evaluate the existence of exceptional circumstances do not favor abstention. Dkt. 23, at 15-18. As noted above, the Court must first evaluate whether the two cases are sufficiently parallel to warrant consideration of the six factors relevant to whether *Colorado River* abstention is appropriate. The Fifth Circuit has noted that "a mincing insistence on precise identity" of parties and issues is not required to find that cases are parallel. *McIntosh*, 828 F.2d at 1121. Instead, the "central inquiry" in making this determination is "whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Rimkus*, 2007 WL 4223434, at *4 (citing *TruServ*, 419 F.3d at 592; *Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006)).

While the Harris County Case and this lawsuit share the same parties, apart from V&E, and revolve around the same issue of WSL's representation of the Zest

18

Defendants in the Walmart Litigation, there is not a substantial likelihood that the resolution of the Harris County Case would dispose of all claims this litigation. In the Harris County Case, the Zest Defendants brought negligence and breach-of-fiduciary-duty claims against WSL and V&E based on the law firms' allegedly-deficient representation of the Zest Defendants in the Walmart Litigation. Dkt. 19, at 17-30. Here, in contrast, WSL seeks fees for its representation of the Zest Defendants not only in the Walmart Litigation but also in the Deloitte Case, which is not at issue in the Harris County Case. Dkts. 19, at 17-30; 60; *Parada v. Sandhill Shores Prop. Owners Ass'n, Inc.*, 604 F. Supp. 3d 567, 582 (S.D. Tex. 2022) (concluding that state and federal proceedings were not parallel because state-court ruling would not be dispositive of certain claims raised in federal case); *see also FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 680 (S.D. Tex. 2010) ("While the two actions concern similar facts, the causes of action in the two actions are different, and the resolution of one will not necessarily dispose of all claims in the other.").

The Zest Defendants argue that it "strains credulity to suggest that the same claims and counterclaims will not be pursued in whichever court exercises its jurisdiction," yet WSL has not sought additional fees from the Zest Defendants in the Harris County Case—further highlighting that a state-court ruling on WSL's representation of the Zest Defendants in the Walmart Litigation would not dispose of WSL's claim for fees arising from the wholly-separate Deloitte Case. Dkt. 24, at 5; *Brown & Williamson v. Williams*, 81 F.3d 155 (5th Cir. 1996) (explaining that "abstention is only appropriate if the state court litigation will fully resolve the

substantive claims of the litigants in the federal litigation" (citing *Moses*, 460 U.S. at 14)); *Flores v. First Nat'l Bank of Edinburg*, No. CV B-08-506, 2009 WL 10694787, at *2 (S.D. Tex. Mar. 25, 2009) (noting that "*Colorado River* abstentions require that the same parties are *contemporaneously* litigating substantially the same issues in another forum" (emphasis added)). Moreover, even if the resolution of the Harris County Case might conflict with the outcome of this case, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Colo. River*, 424 U.S. at 816.

Given that the resolution of the Harris County Case would not dispose of all claims in this case and keeping in mind that "[a]ny doubt regarding the parallel nature of the state-court suit should be resolved in favor of exercising jurisdiction," the undersigned finds that *Colorado River* abstention is unwarranted here. *Rimkus*, 2007 WL 4223434, at *5 (quoting *TruServ*, 419 F.3d at 592).[5] The District Judge should deny the Zest Defendants' motion to stay or dismiss this case based on *Colorado River* abstention.

>           3.    WSL has adequately stated its claims against the Zest
>                 Defendants.

The Zest Defendants finally argue that WSL's claims for breach of contract (as to the Walmart Litigation) and unjust enrichment should be dismissed for failure to

---

[5] "Because the lawsuits are not parallel, the *Colorado River* abstention doctrine cannot be invoked here and the Court need not consider the abstention factors." *Apogee Telecom, Inc. v. Univ. Video Servs., Inc.*, No. A-17-CA-00672-SS, 2018 WL 6220177, at *2 (W.D. Tex. Mar. 26, 2018).

state a claim. Dkt. 19, at 10-14. First, the Zest Defendants argue that because WSL was terminated for cause in the Walmart Litigation, they materially breached the contract and are precluded from seeking a contingent fee under the parties' contract. *Id.* at 10-12. The Zest Defendants also contend that WSL's breach of its fiduciary duties to the Zest Defendants and the existence of contracts between the parties doom WSL's unjust-enrichment claim. *Id.* at 13-14. WSL responds that the Zest Defendants' bases for dismissal all require the Court to evaluate factual disputes that are inappropriate for resolution at the motion-to-dismiss phase and insists that the existence of contracts does not preclude the pleading of an unjust-enrichment claim in the alternative. Dkt. 23, at 20-21. In reply, the Zest Defendants maintain that public records from the Walmart Litigation defeat WSL's claims. Dkt. 24, at 6-9.

The Zest Defendants first move for dismissal of WSL's breach-of-contract claim based on public records[6] from the Walmart Litigation, arguing that they confirm that WSL forfeited its contingency fee and breached the parties' agreement by "submit[ting] a false affidavit to the court" in that litigation, which led that court to vacate the judgment WSL had secured in the Zest Defendants' favor. Dkt. 19, at 11-13. While the order the Zest Defendants rely on in support of their argument confirms that the court *considered* imposing sanctions against WSL for the misrepresentations it made to the court, it does not necessarily establish that the Zest Defendants

---

[6] *See Rowland v. Sw. Corr., LLC*, No. 420CV00847ALMCAN, 2021 WL 4206409, at *5 (E.D. Tex. Aug. 17, 2021), *R. & R. adopted*, No. 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) ("A court may take judicial notice of publicly available documents, including filings, orders, and judgments from other lawsuits." (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011))).

21

terminated WSL for cause or that WSL breached the parties' contract. *Id.* at 64-66; Dkt. 23 (pointing out that the Walmart Litigation order "addressed Walmart's motion for new trial based on Zest's failure to disclose the Bohling patent application in the context of Zest's own discovery obligations—it made no finding that WSL breached its engagement agreement with Defendants or that Defendants validly terminated WSL for cause under the terms of that agreement"); *Johns L. Firm, LLC v. Pawlik*, No. 24-20147, 2024 WL 4835239, at *3 (5th Cir. Nov. 20, 2024) ("Whether a former client had good cause to discharge an attorney is a fact issue on which the client bears the burden of proof."). While the Zest Defendants may ultimately be correct that WSL forfeited its contingency fee or otherwise breached its agreement with them through its litigation conduct in the Walmart Litigation, such a question is not ripe for resolution at this time. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (explaining that fact-intensive inquiries are "better suited to summary judgment" than motions to dismiss).[7] The District Judge should deny the Zest Defendants' motion to dismiss WSL's breach-of-contract claim.

---

[7] The Zest Defendants claim that dismissal of WSL's breach-of-contract claim is appropriate at this time because it is "undisputed" that the judge in the Walmart Litigation found that WSL submitted a false affidavit to the court, and "Texas courts have consistently held that filing false affidavits violates professional conduct rules." Dkt. 24, at 7-8. However, the cases the Zest Defendants cited in support of this proposition were all resolved at the summary-judgment or trial phase. *See, e.g.*, *Diaz v. Comm'n for Law. Discipline*, 953 S.W.2d 435, 436 (Tex. App.—Austin 1997, no writ) (affirming jury verdict suspending attorney from practice where he had "filed pleadings containing false statements and attached thereto his affidavit containing similar false statements"); *Rush v. Barrios*, 56 S.W.3d 88, 103 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (affirming finding on summary judgment that attorney's representation of client was terminated for cause).

The Zest Defendants also move to dismiss WSL's unjust-enrichment claim, arguing that the existence of valid contracts between the parties bars this claim. Dkt. 19, at 14. "In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). While WSL may plead inconsistent theories in the alternative under Federal Rule of Civil Procedure 8(d)(3), it must nonetheless "plead facts sufficient to state an alternative theory of unjust enrichment." Fed. R. Civ. P. 8(d)(3); *Dick v. Colo. Hous. Enters., LLC*, 780 F. App'x 121, 126 (5th Cir. 2019) (dismissing unjust-enrichment claim where "[t]he complaint never alleges, even in the alternative, that there was no valid express contract to govern the parties' dealings"). Here, WSL alleged that its unjust-enrichment claim was brought "only to the extent that any Defendant contends it is not bound by, did not assume, or is not liable under the written engagement agreements governing WSL's legal services," and otherwise pleaded the elements of its unjust-enrichment claim. Dkt. 1, at 17.

Although WSL may not recover under both claims for breach of contract and unjust enrichment, it has sufficiently pleaded its unjust-enrichment claim in the alternative such that dismissal of that claim at this time is not necessary. *Sterett Equip. Co., LLC v. PH Steel, Inc.*, No. 1:22-CV-476, 2024 WL 1179788, at *9 (E.D. Tex. Mar. 19, 2024) (explaining that "even if alternative theories of recovery are supported by the same factual allegations, they are not necessarily subject to dismissal"); *Infowise Sols., Inc. v. Microstrategy, Inc.*, No. CIV.A. 3:04-CV-0553, 2005

WL 2445436, at \*7 (N.D. Tex. Sept. 29, 2005) (noting that while Rule 8(a) allows a plaintiff to plead both breach-of-contract or unjust-enrichment claims, a plaintiff may not recover under both claims); *see also Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at \*16 (S.D. Tex. Sep. 20, 2019) (declining to dismiss unjust-enrichment claim pleaded in alternative because "'there is no requirement that a claimant who seeks [equitable remedies] ... must first demonstrate the inadequacy of a remedy at law'" (quoting Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011))). The Zest Defendants' further argument that WSL's claim for unjust enrichment is precluded by its own breach of the contract once again, as explained above, improperly invites the Court to resolve a disputed issue of fact at the motion-to-dismiss phase. Dkt. 19, at 12-14. The District Judge should deny the Zest Defendants' motion to dismiss WSL's unjust-enrichment claim.

## IV.    RECOMMENDATIONS

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Bartko's motion to dismiss, Dkt. 17.

The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY** the Zest Defendants' motion to dismiss, Dkt. 19.

The referral of this case to the Magistrate Judge should now be canceled.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to

24

which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 20, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE